MAIN, Judge.
Willie Earl Scott appeals the circuit court's summary dismissal of his Rule 32, Ala.R.Crim.P., petition for postconviction relief, challenging his capital-murder convictions for two counts of capital murder and his resulting sentence of death; and his convictions for first-degree rape, attempted murder, and first-degree burglary, and his resulting sentences of life imprisonment for each of those convictions.
On August 16, 2002, Scott was convicted of two counts of capital murder for killing 10-year-old Latonya Sager. The murder was made capital because it was committed during a rape, see § 13A-5-40(a)(3), Ala.Code 1975, and because the victim was under the age of 14, see § 13A-5-40(a)(15), Ala.Code 1975. Scott was also convicted, for events involving a different victim, of first-degree rape, attempted murder, and first-degree burglary. After a sentencing hearing, the jury recommended, by a vote of 10-2, that Scott be sentenced to death for his capital-murder convictions. The trial court accepted the jury's recommendation and sentenced Scott to death for his capital-murder convictions. The trial court also sentenced Scott to consecutive terms of life imprisonment for each of the noncapital convictions.
On direct appeal, this Court remanded the case for the trial court to correct a deficiency in the capital-sentencing order. On May 27, 2005, this Court affirmed Scott's capital-murder convictions and death sentence on return to remand. See Scott v. State, 937 So.2d 1065, 1088 (Ala.Crim.App.2005) (opinion on return to remand). On September 16, 2005, this Court overruled Scott's application for rehearing. Scott petitioned the Alabama Supreme Court for certiorari review, and on February 17, 2006, the Alabama Supreme Court denied Scott's petition for the writ of certiorari. Thereafter, Scott petitioned the United States Supreme Court for certiorari review. On October 2, 2006, the United States Supreme Court denied Scott's petition for the writ of certiorari. See Scott v. Alabama, 549 U.S. 841, 127 S.Ct. 99, 166 L.Ed.2d 71 (2006).
On February 15, 2007, Scott, with the assistance of counsel, filed a Rule 32, Ala.R.Crim.P., petition in the Jefferson Circuit Court, asserting a number of claims. On May 11, 2007, Scott filed a motion seeking discovery of a number of documents, including records pertaining to himself, the victims, and assorted family members of the victims'; records pertaining to assorted physical evidence; and documents pertaining to the investigation of the offenses. On May 29, 2007, the State filed an answer to Scott's petition, challenging the claims *1245 in Scott's petition on preclusionary, pleading, and evidentiary grounds. On July 20, 2007, the State and Scott filed a joint status update requesting that the circuit court advise the parties if the court wanted either party to provide any additional information; the pleading further indicated that the State anticipated filing a motion to dismiss the petition "later this year" and that Scott would respond to the motion to dismiss "soon thereafter." (C. 396.) On July 30, 2007, the circuit court issued a written order summarily denying Scott's petition on preclusionary, pleading, and evidentiary grounds. On August 10, 2007, Scott filed a motion to reconsider the summary denial of his petition and a motion objecting to the circuit court's essentially adopting the State's answer as its order denying the petition. On September 5, 2007, the circuit court denied Scott's motion to reconsider. Scott filed a timely notice of appeal on September 5, 2007, and this appeal followed.
Scott reargues most of the claims from his petition and challenges the propriety of the circuit court's summary denial on various procedural grounds.[1]
I.
Scott first argues that the circuit court erred in summarily denying his Rule 32 petition without granting, or even considering granting Scott leave to amend the petition.
A.
In Ex parte Rhone, 900 So.2d 455 (Ala.2004), the Alabama Supreme Court held that " '[a]mendments to pleadings may be permitted at any stage of the proceedings prior to the entry of judgment.' " 900 So.2d at 457, quoting Rule 32.7(b), Ala.R.Crim.P.(first emphasis original; second emphasis added). However, nothing in Ex parte Rhone, its progeny, or the cases cited therein, imposes any duty on the circuit court to grant leave to amend a petition after the entry of a judgment on the petition. Here, Scott did not request leave to amend the petition until after the circuit court had entered its order summarily denying the petition. Thus, the circuit court's summary denial of the petition in this case does not conflict with the holding in Ex parte Rhone or the other legal authority cited in Scott's brief.
B.
Scott also opines that his amendment was filed after the judgment was entered because he logically waited to amend his petition until he received the discovery he requested. Scott challenges the circuit court's statement in its order denying his motion to reconsider the denial of his petition that "Scott was not entitled to any discovery." (C. 467.) Scott cites Ex parte Land, 775 So.2d 847 (Ala.2000), for the proposition that "[t]he right to seek discovery is not debatable." (Scott's brief at p. 14.) Although Scott is correct that a petitioner may seek discovery in postconviction proceedings, there is no absolute right to discovery. Rather, as the Alabama Supreme Court stated in Ex parte Land:
"We emphasize that this holding-that postconviction discovery motions *1246 are to be judged by a good-cause standard-does not automatically allow discovery under Rule 32, Ala.R.Crim.P., and that it does not expand the discovery procedures within Rule 32.4. Accord [ State v.] Lewis, [656 So.2d 1248,] 1250 [ (Fla.1994) ], wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida's rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner's showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to 'fish' through official files and that it 'is not a device for investigating possible claims, but a means of vindicating actual claims.' People v. Gonzalez, 51 Cal.3d 1179, 1260, 800 P.2d 1159, 1206, 275 Cal.Rptr. 729, 776 (1990), cert. denied, 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991)."
775 So.2d at 852.[2] Thus, as there is no right to discovery in postconviction proceedings, and, because Scott did not actually request leave to amend the petition or notify the circuit court that he wanted to amend the petition until after judgment was entered, Scott's argument that he was withholding his amendment pending discovery is not well-taken.
C.
Scott further asserts that the circuit court erred in summarily denying the petition when the State had not yet filed a motion to dismiss the petition.
Initially, we note that although the State's May 29, 2007, pleading was styled as an "answer" to the petition rather than a "motion to dismiss" the petition, the pleading clearly advocated and sought summary dismissal of the majority of Scott's claims.[3] In any event, and without belaboring the point, Rule 32.7(d), Ala.R.Crim.P., clearly provides that "[i]f the court determines that the petition is not sufficiently specific, or is precluded, or fails to state a claim, or that no material issue of fact or law exists which would entitle the petitioner to relief .... the court may either dismiss the petition or grant leave to file an amended petition." There is no requirement that a circuit court even receive a response or a motion to dismiss from the State before summarily denying a Rule 32 petition. See Bishop v. State, 608 So.2d 345, 347-48 (Ala.1992) (holding that where a simple reading of a petition for postconviction relief shows that, assuming every allegation of the petition to be true, it is obviously without merit or is precluded, the circuit court may summarily dismiss that petition without requiring a response from the district attorney). Thus, for the reasons discussed more fully in Part III of this opinion, because Scott's claims were precluded, insufficiently pleaded or facially without merit, we do not find error in the timing of the circuit court's summary denial of the petition.
II.
Scott next challenges the circuit court's adoption of the State's answer as its order summarily denying his petition.
*1247 The wholesale adoption of orders proposed by the prevailing party is reviewed on a case-by-case basis and has been repeatedly upheld unless the findings and conclusions set out in the order are clearly erroneous. As this Court recently stated in Hodges v. State, 147 So.3d 916 (Ala.Crim.App.2007) :
" 'Hyde contends that the circuit court erred in adopting the State's proposed order. Specifically, he argues that there are numerous factual and legal errors in the order that indicate that the order does not represent the court's own independent judgment, but shows a wholesale adoption of the State's proposed order without consideration of his claims. However, this Court has repeatedly upheld the practice of adopting the State's proposed order when denying a Rule 32 petition for postconviction relief. See, e.g., Coral v. State, 900 So.2d 1274, 1288 (Ala.Crim.App.2004), overruled on other grounds, Ex parte Jenkins, 972 So.2d 159 (Ala.2005), and the cases cited therein. "Alabama courts have consistently held that even when a trial court adopts verbatim a party's proposed order, the findings of fact and conclusions of law are those of the trial court and they may be reversed only if they are clearly erroneous." McGahee v. State, 885 So.2d 191, 229-30 (Ala.Crim.App.2003).'
"[ Hyde v. State,] 950 So.2d [344] at 371 [ (Ala.Crim.App.2006) ].
"Thus, even when a circuit court adopts a proposed order in its entirety, the petitioner must show that the findings of fact and conclusions of law in that order are 'clearly erroneous' before an appellate court will reverse the order solely on the basis that the order was submitted by the State."
147 So.3d at 927-28. See also Lee v. State, 44 So.3d 1145 (Ala.Crim.App.2009) ; McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007). Here, the circuit court's findings and conclusions are not clearly erroneous. Therefore, Scott is not entitled to any relief on this claim.
III.
Scott argues that summary denial of his petition was improper. He claims that the circuit court improperly found a number of his claims to be insufficiently pleaded, applied an incorrect standard of review to a number of his claims, and improperly applied procedural bars to certain claims. Before addressing the merits of Scott's specific claims, we note the following general principles of law.
Rule 32.3, Ala.R.Crim.P., states that "[t]he petitioner shall have the burden of pleading and proving by a preponderance of the evidence the facts necessary to entitle the petitioner to relief." Rule 32.6(b), Ala.R.Crim.P., states that "[t]he petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings."
"An evidentiary hearing on a [Rule 32] petition is required only if the petition is 'meritorious on its face.' Ex parte Boatwright, 471 So.2d 1257 (Ala.1985). A petition is 'meritorious on its face' only if it contains a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the facts relied upon (as opposed to a general statement concerning the nature and effect of those facts) sufficient to show that the petitioner is entitled to relief if *1248 those facts are true. Ex parte Boatwright, supra; Ex parte Clisby, 501 So.2d 483 (Ala.1986)."
Moore v. State, 502 So.2d 819, 820 (Ala.1986). A petitioner bears no burden of "proving" his claims at the pleading stage. See Ford v. State, 831 So.2d 641 (Ala.Crim.App.2001). As this Court noted in Boyd v. State, 913 So.2d 1113 (Ala.Crim.App.2003) :
" ' Rule 32.6(b) requires that the petition itself disclose the facts relied upon in seeking relief.' Boyd v. State, 746 So.2d 364, 406 (Ala.Crim.App.1999). In other words, it is not the pleading of a conclusion'which, if true, entitle[s] the petitioner to relief.' Lancaster v. State, 638 So.2d 1370, 1373 (Ala.Crim.App.1993). It is the allegation of facts in pleading which, if true, entitles a petitioner to relief. After facts are pleaded, which, if true, entitle the petitioner to relief, the petitioner is then entitled to an opportunity, as provided in Rule 32.9, Ala.R.Crim.P., to present evidence proving those alleged facts."
913 So.2d at 1125. Further,
"The burden of pleading under Rule 32.3 and Rule 32.6(b) is a heavy one. Conclusions unsupported by specific facts will not satisfy the requirements of Rule 32.3 and Rule 32.6(b). The full factual basis for the claim must be included in the petition itself. If, assuming every factual allegation in a Rule 32 petition to be true, a court cannot determine whether the petitioner is entitled to relief, the petitioner has not satisfied the burden of pleading under Rule 32.3 and Rule 32.6(b). See Bracknell v. State, 883 So.2d 724 (Ala.Crim.App.2003)."
Hyde v. State, 950 So.2d 344, 356 (Ala.Crim.App.2006).
With these principles in mind, we now look to Scott's claims.
A.
Scott argues that he was incompetent to stand trial. He asserts that this claim was adequately pleaded and that it raised principles of substantive due process immune to the procedural bars in Rule 32.2.
In his petition, Scott alleged that, based on his conduct in court in August 2001, he was evaluated to determine whether he was competent to stand trial. He further asserted that, following a hearing in February 2002, the trial court found him competent to stand trial. Scott then set out assorted acts and comments he made at trial in August 2002 that he contends establish that he was not competent to stand trial. Thus, Scott concluded, the trial court erred in not sua sponte holding a hearing during the trial to determine whether Scott was competent to stand trial. The circuit court denied this claim as follows:
"Scott asserts in paragraphs 59-68 that the Circuit Court erred in finding him competent to stand trial, and that this failure violated his rights under Pate v. Robinson, 383 U.S. 375, 377 (1966). Though Scott does not challenge the Circuit Court's initial determination that he was competent, he argues that the Circuit Court erred by failing to sua sponte reconsider its determination and hold a new competency hearing given Scott's subsequent behavior that [he] presented during the course of the trial. (Pet. at para. 59, 61-62, 67-68) This claim is addressed as follows:
"(a) This claim is procedurally barred from this Court's review, under Rule 32.2(a)(3) and Rule 32.2(a)(5) of the Alabama Rules of Criminal Procedure, because it could have been but was not raised at trial or on direct appeal.
*1249 Nicks v. State, 783 So.2d 895, 906-07 (Ala.Crim.App.1999) ; Medina v. Singletary, 59 F.3d 1095, 1106 (11th Cir.1995) ('A Pate claim "can and must be raised on direct appeal" ') (quoting James v. Singletary, 957 F.2d 1562, 1572 (11th Cir.1992) ).
"(b) It does not appear that Scott raises a substantive due process claim in his petition, as the claim focuses entirely on the trial court's failure to respond to alleged incidents and hold a new hearing. To the extent Scott does raise a substantive due process claim, however, it is summarily denied pursuant to Ala.R.Crim.P. 32.7(d) for failure to state a claim upon which relief can be granted because the facts alleged do not demonstrate his incompetence. '[A] petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence.' Nicks, 783 So.2d at 908-09 (quoting Medina, 59 F.3d at 1106 ). Scott's claim relies merely on a few courtroom outbursts and disagreements between Scott and his attorneys. (Pet. at para. 61-66) Even if all of the facts alleged in the petition were assumed to be true, they would not demonstrate Scott's incompetency by a preponderance of the evidence."
(C. 7-9.)
The circuit court's findings are supported by the record, and we adopt them for purposes of this opinion. To the extent the claim challenges procedural due-process principles, that claim is barred. See Nicks v. State, 783 So.2d 895 (Ala.Crim.App.1999). To the extent that the claim raises substantive due-process concerns, although Scott identified several outbursts and bizarre behavior he exhibited at trial in August 2002, he did not plead any facts to indicate that those acts differed from the bizarre behavior he exhibited in August 2001. Further, it appears from Scott's pleadings that the trial court conducted a full and thorough investigation into Scott's competency following his behavior in August 2001, had Scott evaluated, and held a hearing before concluding that Scott was competent to stand trial. Thus, as there is nothing in the petition suggesting any new developments to call into question the earlier finding of competency, Scott failed to set out in his petition sufficiently and with specificity facts to satisfy his heavy burden of pleading.[4] See Hyde v. State, 950 So.2d at 356 ; Rules 32.3 and 32.6(b), Ala.R.Crim. P. For these reasons, we find no error in the circuit court's decision to summarily deny this claim. See Rule 32.7(d), Ala.R.Crim.P.
B.
Scott next claims that the trial court deprived him of his Sixth Amendment right to counsel during trial "when it directed Mr. Scott and two of [Scott's] relatives into a separate room to discuss trial strategy and specifically barred trial counsel from participating in that crucial conversation." (C. 208.) Scott asserted in his petition that he and trial counsel had a disagreement over whether to call certain witnesses at trial, notably that trial counsel was opposed to calling those witnesses and Scott insisted on calling the witnesses.
*1250 Scott further asserted that defense counsel brought the disagreement to the trial court's attention and the trial court held a hearing on the matter; the trial court then instructed Scott and his two aunts to go into a separate room to discuss the decision without counsel or the court present.
After finding the claim to be barred by Rules 32.2(a)(3) and (5), Ala.R.Crim.P., the circuit court further found:
"This claim is refuted by the record. The Court allowed Scott to consult with his family about the decision to defend against the charges (either by testifying himself, presenting other witnesses, or both). The petition suggests that trial counsel was denied access to this meeting and that this thwarted the representation. (Pet. at para. 74) The petition grossly misrepresents the circumstances; it is apparent from the record that the family members consulted with Scott in accordance with trial counsel's wishes, in an attempt to convince Scott not to testify. Trial counsel first raised the idea of Scott talking to his family, informing the Court that his family also opposed the idea of calling the defense witnesses, and in particular opposed the idea of Scott taking the stand. (R. 793-94) Counsel even specifically requested that Scott's aunt be brought in because she had watched most of the trial. (R. 799-800) When the Court asked that the defendant go to another room to speak with his family away from the lawyers and the Court, trial counsel did not object. (R. 809-10) After the conference with the family, the court gave trial counsel several more hours to advise his client on which witnesses to call before resuming the hearing. (R. 817) These facts do not evince any violation of the Sixth Amendment. The claim is summarily denied pursuant to Ala.R.Crim.P. 32.7(d) for failure to state a claim upon which relief can be granted."
(C. 10-11.) (Emphasis original.)
The events in this case hardly resemble the circumstances in the legal authority Scott cites on appeal. For example, Scott cites Payne v. State, 421 So.2d 1303, 1305 (Ala.Crim.App.1982), for the proposition that "[d]epriving a criminal defendant of the right to consult with counsel during court recesses-regardless of how brief the recesses may be-violates the constitutional right to effective assistance of counsel." In Payne, this Court reversed the judgment of the trial court because the trial court had prevented the defendant from discussing anything with counsel during a recess because at the time of the recess the defendant was on the witness stand in the middle of his testimony.
Here, however, the facts clearly indicate that the trial court did not prevent Scott from consulting with his attorney; rather, the events were precipitated by trial counsel's efforts to convince Scott to forgo testifying or calling certain witnesses and the brief discussion with Scott's relatives was in furtherance of that effort. Further, the trial court also afforded Scott the opportunity to meet with counsel, if he desired, after discussing the matter with his aunts. Finally, this Court extensively examined this very claim, concluding that "no error occurred because there was no interference with the attorney-client relationship." Scott v. State, 937 So.2d at 1075. Based on the specific facts of this case, the circuit court's findings are supported by the record. Summary denial of this claim was proper.
C.
Scott also claims that his trial counsel was ineffective for a number of reasons.
"To sufficiently plead an allegation of ineffective assistance of counsel, a Rule *1251 32 petitioner not only must 'identify the [specific] acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,' Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), but also must plead specific facts indicating that he or she was prejudiced by the acts or omissions, i.e., facts indicating 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' 466 U.S. at 694, 104 S.Ct. 2052. A bare allegation that prejudice occurred without specific facts indicating how the petitioner was prejudiced is not sufficient."
Hyde v. State, 950 So.2d at 356.
1.
Scott first argues that the circuit court used an incorrect standard for pleading prejudice. According to Scott, the circuit court held Scott to the standard of pleading that the deficient performance "would have been likely to change the result" (Scott's brief at p. 37), rather than the standard in Strickland, 466 U.S. at 694, "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."
As Scott notes, the United States Supreme Court stated in Strickland:
"[A] defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case....
"... The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome."
466 U.S. at 693-94. However, as the State correctly asserts, the United States Supreme Court continued, stating:
"In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law. An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed. The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies of the particular decisionmaker, such as unusual propensities toward harshness or leniency. Although these factors may actually have entered into counsel's selection of strategies and, to that limited extent, may thus affect the performance inquiry, they are irrelevant to the prejudice inquiry. Thus, evidence about the actual process of decision, if not part of the record of the proceeding under review, and evidence about, for example, a particular judge's sentencing practices, should not be considered in the prejudice determination.
"The governing legal standard plays a critical role in defining the question to be asked in assessing the prejudice from counsel's errors. When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt. When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability *1252 that, absent the errors, the sentencer-including an appellate court, to the extent it independently reweighs the evidence-would have concluded that the balance of aggravating and mitigating circumstances did not warrant death.
"In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors."
466 U.S. at 694-96 (emphasis added).
After carefully reviewing the applicable legal authority, the petition, and the circuit court's order denying the petition, we conclude that although the circuit court's order does deviate somewhat from the standard articulated in Strickland, the circuit court's ultimate resolution of the claims was proper for the reasons discussed in more detail below.
2.
Scott further argues that the circuit court erred in considering his ineffective-assistance-of-counsel claims individually, without also considering the cumulative effect of the alleged errors. However, as this Court stated in Brooks v. State, 929 So.2d 491 (Ala.Crim.App.2005) :
"Other states and federal courts are not in agreement as to whether the 'cumulative effect' analysis applies to Strickland claims. As the Supreme Court of North Dakota noted in Garcia v. State, 678 N.W.2d 568, 578 (N.D.2004) :
" 'Garcia argues that even if trial counsel's individual acts or omissions are insufficient to establish he was prejudiced, the cumulative effect was substantial enough to meet Strickland's test. See Williams v. Washington, 59 F.3d 673, 682 (7th Cir.1995) ("In making this showing, a petitioner may demonstrate that the cumulative effect of counsel's individual acts or omissions was substantial enough to meet Strickland's test"); but see Scott v. Jones, 915 F.2d 1188, 1191 (8th Cir.1990) ("cumulative error does not call for habeas relief, as each habeas claim must stand or fall on its own").'
"See also Holland v. State, 250 Ga.App. 24, 28, 550 S.E.2d 433, 437 (2001) ('Because the so-called cumulative error doctrine is inapplicable, each claim of inadequacy must be examined independently of other claims, using the two-prong standard of Strickland v. Washington.' (footnote omitted)); Carl v. State, 234 Ga.App. 61, 65, 506 S.E.2d 207, 212 (1998) ('Georgia does not recognize the cumulative error rule.'); Fisher v. Angelone, 163 F.3d 835, 852 (4th Cir.1998) ('Not surprisingly, it has long been the practice of this Court to individually assess claims under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). See, e.g., Hoots v. Allsbrook, 785 F.2d 1214, 1219 (4th Cir.1986) (considering ineffective assistance *1253 claims individually rather than considering their cumulative impact.).').
"We can find no case where Alabama appellate courts have applied the cumulative-effect analysis to claims of ineffective assistance of counsel. However, the Alabama Supreme Court has held that the cumulative effect of prosecutorial misconduct necessitated a new trial in Ex parte Tomlin, 540 So.2d 668, 672 (Ala.1988) ('We need not decide whether either of the two errors, standing alone, would require a reversal; we hold that the cumulative effect of the errors probably adversely affected the substantial rights of the defendant and seriously affected the fairness and integrity of the judicial proceedings.'). Also, in Ex parte Bryant, [951] So.2d [724] (Ala.2002), the Supreme Court held that the cumulative effect of errors may require reversal.
"If we were to evaluate the cumulative effect of the ineffective assistance of counsel claims, we would find that Brooks's substantial rights were not injuriously affected. See Bryant and Rule 45, Ala.R.App.P."
929 So.2d at 514. See also Lee v. State, 44 So.3d 1145 (Ala.Crim.App.2009) ; Bush v. State, 92 So.3d 121 (Ala.Crim.App.2009) ; and McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007). Here too, even evaluating the cumulative effect of the ineffective-assistance-of-counsel allegations, we would find that Scott's substantial rights had not been injuriously affected.
3.
Scott asserts that summary denial of his individual ineffective-assistance-of-counsel claims was improper.
a.
Scott asserts that trial counsel was ineffective for not adequately investigating and preparing for the case. In his petition, Scott discussed a number of alleged facts which he contends an adequate investigation would have uncovered, including evidence indicating that Scott and a key witness for the State had previously engaged in a sexual relationship over a period of several months and that that witness set out to frame him for the rape and murder because he ended the relationship with her; evidence from witnesses other than Scott as to what Scott contends happened on the night of the rape; evidence explaining the presence of Scott's DNA on the leg of the murder victim and at the crime scene; evidence including that Scott had never exhibited a propensity for young girls; and evidence suggesting that the victim's mother or someone else may have been involved in the victim's murder.
Although he listed several examples of what he contends represented inadequate investigation, his assertions present little more than hypothetical scenarios and conclusory allegations. He does not identify any witnesses who could testify to the facts he claims would have benefited him, nor does he assert that any further investigation would have uncovered the witnesses or evidence he contends was not adequately investigated. Thus, summary denial of this claim was proper. See Rules 32.3, 32.6(b), and 32.7(d), Ala.R.Crim.P.
b.
Scott next asserts that counsel was ineffective at trial for not retaining any experts to assist in his defense. The circuit court addressed this claim as follows:
"This claim is insufficiently pleaded. Scott faults trial counsel for not hiring various experts including a DNA expert, a forensic pathologist, and a crime scene investigator. But Scott fails to identify any expert that was both available to *1254 testify and that trial counsel reasonably should have been aware of, and fails to state definitely that any expert would have provided any specific testimony that this Court could evaluate for its potential to change the result given the overwhelming evidence of Scott's guilt. Though Scott claims an expert would have supported his theory that DNA could have transferred from the couch to the victim's thigh, he fails to demonstrate that such testimony would have been different from that elicited from Ms. Roland on this issue. (R. 741-47) Accordingly, Scott has failed to plead sufficient facts to prove deficient performance or prejudice under Strickland."
(C. 16-17.) The circuit court's findings are supported by the record, and we adopt them for purposes of this opinion. Because Scott failed to meet his burden of pleading, summary denial of this claim was proper.
c.
Scott next avers that trial counsel was ineffective for not adequately investigating Scott's competency to stand trial, for not presenting adequate argument at the hearing on Scott's competency, and for not seeking an additional hearing on Scott's competency in light of his behavior at trial.
In its order denying the petition, the circuit court found:
"This claim is insufficiently pleaded. Though Scott claims counsel failed to note discrepancies between Dr. Nagi's report and his testimony, there was, in fact, no inconsistency. Scott alleges that Dr. Nagi's report found 'Psychosis, NOS (not otherwise specified) and Polysubstance Dependence.' (Pet. at para. 140) And at the hearing, Dr. Nagi testified that Scott had 'personality disorder' and 'was under the influence' of drugs, but that his symptoms were not a recognized mental illness, much less one that would prevent a finding of competency. (R. 64-69) Much of the claim is an attack on the correctness of Dr. Nagi's conclusions based on evidence elicited at the hearing. (Pet. at para. 141-54) Scott's allegations that Dr. Nagi suffered a conflict of interest are unsupported by the record, and the petition neither states how trial counsel should have learned of the alleged conflict nor how it should have presented evidence of this conflict. (Pet. at para. 151) Though Scott makes a number of conclusory allegations that certain evidence suggests he was incompetent to stand trial, he provides no explanation of how those opinions could have been presented to the court. Scott fails to identify specific questions that trial counsel should have asked, or to allege what answers these questions would have elicited that would have affected the Court's decision. Accordingly, Scott has failed to plead sufficient facts to prove deficient performance or prejudice under Strickland."
(C. 20-21.) The circuit court further stated, with regard to Scott's contention that counsel should have sought a second competency hearing:
"The facts pleaded fail to demonstrate that it was unreasonable not to ask for a second competency hearing. Furthermore, the facts alleged, even if taken as true, do not demonstrate a reasonable probability that, had trial counsel sought a second competency determination, the court would have reached a different conclusion. The State conceded that Scott made several outbursts and statements at trial, and that he adamantly disagreed with counsel as to how his defense should be presented. This conduct does not demonstrate lack of competency, and indeed is consistent with *1255 numerous previous capital defendants who were similarly competent to stand trial. E.g., Matthews v. State, 671 So.2d 146, 147-48 (Ala.Crim.App.1995) (finding that defendant failed to raise reasonable doubt as to his competency to stand trial notwithstanding that he refused to accept the State's plea offer, decided to testify at trial against the advice of counsel, and made disrespectful comments to the trial judge at his sentencing hearing); Brown v. State, [982 So.2d 565] (Ala.Crim.App. Apr. 28, 2006) (finding no prejudice from capital defendant's removal from trial for two days because his outbursts were distracting the jury and defense counsel); Clemons v. State, 720 So.2d 961 (Ala.Crim.App.1996) (finding no error in removing capital defendant from a trial who was 'disruptive, disorderly, and uncooperative,' including exclaiming in front of the jury that he had already been convicted in federal court and wanted to fire his attorneys). Indeed, Scott's active interest in the details of the trial demonstrates that he was aware of what was going on and was attempting to aid his attorneys in the representation."
(C. 22-23.)
The circuit court's findings are supported by the record, and we adopt them for purposes of this opinion. Scott failed to meet his burden of pleading, and summary denial of this claim was proper.
d.
Scott also argues that trial counsel was ineffective for not challenging the consolidation of the charges at trial.
On direct appeal, this Court thoroughly addressed the propriety of trying the three charges in a single trial, as follows:
"Scott next argues that the trial court erred when it failed to sever the capital-murder charges involving Latonya Sager from rape and attempted-murder charges involving Landris Wright. He claims that the charges were improperly joined for trial and that he was prejudiced as a result of having to defend against the multiple charges in a single trial.
"Scott was charged in three indictments. One indictment charged two counts of capital murder for the death of Latonya Sager-one count for the intentional murder of a child under the age of 14 years and one count for intentional murder during the course of, or during an attempt to commit, rape. In a second indictment, Scott was charged with one count of rape and one count of attempted murder for his assault on Landris Wright. The third indictment charged him with burglary for Scott's unauthorized entry into Gladys Smith's residence. On July 28, 2000, the State filed a motion pursuant to Rule 13, Ala.R.Crim.P., seeking consolidation of the offenses. The State argued that the actions were part of a common plan or scheme, that they were connected, and that they were of the same or similar character. (C. 466-67.) The trial court granted the motion. On the morning of trial, Scott objected to the consolidation of the cases and requested that the trial court sever the capital charges from the noncapital charges. (R. 97.) [3] The trial court stated that the cases would remain consolidated for trial.
"Joinder of offenses is governed by Rule 13.3(a), Ala.R.Crim.P., which provides, in relevant part:
" 'Two or more offenses may be joined in an indictment, information, or complaint, if they:
*1256 " '(1) Are of the same or similar character; or
" '(2) Are based on the same conduct or are otherwise connected in their commission; or
" '(3) Are alleged to have been part of a common scheme or plan.'
" Rule 13.3(c), Ala.R.Crim.P., provides, in relevant part:
" 'If offenses or defendants are charged in separate indictments, informations, or complaints, the court on its own initiative or on motion of either party may order that the charges be tried together or that the defendants be joined for the purposes of trial if the offenses or the defendants, as the case may be, could have been joined in a single indictment, information, or complaint.'
" Rule 13.4(a), Ala.R.Crim.P., provides that if the defendant is prejudiced by the joinder of offenses the court may grant a severance. 'It is only the most compelling prejudice that will be sufficient to show the court abused its discretion in not granting a severance. United States v. Perez, 489 F.2d 51, 65 (5th Cir.1973), cert. denied, 417 U.S. 945, 94 S.Ct. 3067, 41 L.Ed.2d 664 (1974). A mere showing of some prejudice is not enough.' Ex parte Hinton, 548 So.2d 562, 566 (Ala.1989).
"Scott argues in this Court, as he did in the trial court, that the charges involving Latonya Sager should not have been consolidated with the charges involving Landris Wright because, he argues, the cases were not of the same or similar character, they were not based on the same conduct or were otherwise connected, and they were not part of a common plan or scheme. The State argues that the trial court correctly granted the motion to join the cases because the offenses shared sufficient similarities and because Scott failed to demonstrate any prejudice. We agree with the State.
"In Lewis v. State, 889 So.2d 623 (Ala.Crim.App.2003), this Court considered whether capital-murder charges had been properly joined for trial with noncapital murder charges. After discussing the relevant principles regarding joinder, we determined that the trial court had not erred in joining the charges for trial. We held:
" 'The consolidation of the noncapital offenses and the capital offenses in this case was proper because the crimes were of a similar character and because evidence of each crime would have been admissible in a trial for the others as evidence of a common plan, scheme, or design, of Lewis's intent, and of Lewis's motive. The crimes were similar in that each occurred in Baldwin County near where Lewis lived; each involved a young female victim with brown hair; each involved a murder, robbery, rape, and kidnapping or an attempt thereof; and, in each case, Lewis used or planned to use a knife. Each crime would have been admissible in the trial of the others as evidence of a common plan, scheme, or design-to kidnap, rape, rob, and murder young women with brown hair who resembled and/or reminded Lewis of his ex-wife Lena-and of Lewis's intent and motive.'
" 889 So.2d at 661-62.
"The cases against Scott were properly joined for many of the reasons we found to apply in Lewis. The crimes were similar in that each victim was acquainted with Scott. Each victim was a young black girl.[4] The crime scenes were approximately 10 miles apart and the crimes were committed within a few hours of each other. In each incident, Scott raped or attempted to rape the *1257 victim and he physically assaulted the victims by choking and/or suffocating them. Evidence from the first crime scene was found at the second crime scene, and the police used evidence from the second crime scene to connect Scott to the death of Latonya Sager. Finally, Scott told his second rape victim that he had killed a girl earlier that evening. The requirements of Rule 13.3(a), Ala.R.Crim.P., were fully satisfied here. Scott has not demonstrated any compelling prejudice as the result of the joinder.
__________
937 So.2d at 1078-80. In its order summarily denying Scott's Rule 32 petition, the circuit court quoted extensively from this Court's opinion on direct appeal, and then found: "Though Scott claims counsel failed to make the detailed arguments that would have resulted in a different decision, the petition fails to provide any arguments that undermine the reliability of the holding of the Court of Criminal Appeals." (C. 27.) The circuit court's conclusion is correct. Scott asserted in his petition that counsel should have argued the cross-admissibility test for joinder and that he would be substantially prejudiced by the joinder; however, those underlying factors were considered and addressed in this Court's opinion on direct appeal. Thus, he failed to meet his burden of pleading sufficiently and with specificity facts to establish either prong of the Strickland test. Therefore, summary denial of this claim was proper.
e.
Scott further contends that counsel was ineffective at trial for not exploiting what he says were holes in the State's case. Scott's assertions are directed toward the alleged inconsistencies in the rape victim's testimony that her rapist forced her to bath in vinegar and poured "glitter lotion" in her vagina, yet no physical evidence of either substance was discovered. Scott asserts that the victim should have been further questioned about her claim that the glitter was poured in her vagina after the alleged vinegar bath to rebut testimony that the vinegar would have washed away physical evidence; that witnesses were not asked whether they smelled either substance at the scene or tested the bed sheet or items in the bathroom for those substances; that a detective was not called to affirm his statements to Scott during Scott's interrogation that vinegar would not wash away evidence of rape; and that the State's DNA expert was not confronted with the detective's comment which Scott said impeached the expert's testimony.
In its order summarily denying the petition, the circuit court found:
"Though Scott faults counsel for not challenging Wright for her failure to mention the lotion on September 11, the record shows that counsel did ask her about the lotion, and that she specifically testified that she told the detectives about the lotion that day at the hospital. (R. 432.) Detective Clark and DNA expert Roland were both asked about the failure to find the lotion (R. 726-27), but Scott persists that counsel should have somehow 'pursue [d] the matter further' to beleaguer the point that no lotion was found. Similarly, though Scott makes much of the fact that no semen was found even though Scott raped Wright *1258 again after the use of the vinegar, the State expert provided alternative explanations as to why no semen was found, including that Scott would likely have produced much less given that he had ejaculated several times in the preceding hours, and that semen is sometimes simply not found. (R. 748-51.) Though the petition faults counsel for not asking Wright how Scott 'might know where to find a bottle of vinegar, let alone be aware of its cleansing potential' (Pet. at para. 125), it is obvious that such questions would have been improper, as they would have called for speculation from the witness. The facts alleged do not demonstrate that trial counsel was constitutionally deficient for not asking the precise formulations of lotion and vinegar questions that Scott proffers, nor that such questions would have changed the result. Quite simply, counsel repeatedly questioned witnesses about the lotion and vinegar, but those questions did not sufficiently undermine Wright's testimony and the other evidence that a rape occurred." (Footnote omitted.)
(C. 18-19.)
There is always something more that "could" have been done by counsel at trial. See Lawhorn v. State, 756 So.2d 971, 980 (Ala.Crim.App.1999) ( " 'Even the best criminal defense attorneys would not defend a particular client in the same way.' " (quoting Strickland, 466 U.S. at 689 )). However, we cannot say that the additional questions Scott now contends should have been asked, as pleaded in the petition, meet the burden of pleading both prongs of the Strickland test. Therefore, summary denial of this claim was proper.
f.
Scott claims that counsel was ineffective at trial for not challenging two prospective jurors for cause. According to Scott, one prospective juror knew the father of one of the victims and the other prospective juror disclosed during voir dire that she had been raped by her uncle when she was 10 years old.
Scott avers that the first prospective juror actually served on the jury but should have been challenged for cause because she recognized the father of one of the victims as someone who lived in her community and expressed surprise when she learned he was the victim's father. However, as the circuit court found in its order denying the petition, and Scott even conceded in his petition, the juror indicated that she did not personally know the victim's father and had only met him in the community. Scott does not allege that the juror was impartial, and, further, the circuit court found in its order denying the petition that a challenge for cause as to this prospective juror on this ground would have been denied. With regard to the second complained-of prospective juror, the circuit court noted in its order denying the petition that the juror indicated during voir dire that she could be impartial, and the record on direct appeal supports this finding.
Scott did not plead any facts in his petition to meet his burden of pleading either prong of the Strickland test as to counsel's failure to challenge either of these prospective jurors for cause. Even taking the assertions in the petition as true, there is nothing to indicate that a challenge for cause should have been granted as to either prospective juror. "[C]ounsel could not be ineffective for failing to raise a baseless objection." Bearden v. State, 825 So.2d 868, 872 (Ala.Crim.App.2001). Further, one of the prospective jurors was removed with a peremptory strike, and Scott did not plead any facts indicating either that the jury seated was *1259 partial or identify any juror who would have been removed via a peremptory challenge had he not used that challenge removing the complained-of juror. It is clear from the face of the petition that Scott failed to plead sufficient facts supporting the prejudice prong of the Strickland test. Therefore, summary denial of this claim was proper.
g.
Scott also contends that trial counsel was ineffective with regard to the incident during trial when the trial court had Scott discuss with family members outside the presence of his attorney whether to call certain witnesses at trial. Specifically, Scott avers that if he waived his right to communicate with counsel as to the underlying substantive claim, then trial counsel was ineffective for allowing that waiver.
The circuit court denied this claim as follows:
"This claim is meritless. The Court allowed Scott to consult with his family about his decision to defend against the charges (either by testifying himself, presenting other witnesses, or both). It is apparent from the record that family members consulted in accordance with trial counsel's wishes, in an attempt to convince Scott not to testify. Trial counsel first raised the idea of Scott talking to his family, informing the Court that his family also opposed the idea of calling the defense witnesses, and in particular opposed the idea of Scott taking the stand. (R. 793-94.) Counsel even specifically requested that Scott's aunt be brought in because she had watched most of the trial. (R. 799-800.) When the Court asked that the defendant go to another room to speak with his family away from the lawyers and the Court, trial counsel did not object. (R. 809-10.) These facts do not implicate the Sixth Amendment because Scott had full benefit of consultation with his counsel before making his defense decisions. In addition to the consultations that occurred before the family conference, the court gave trial counsel several more hours to advise his client on which witnesses to call after the family conference but before resuming the hearing. (R. 817.)
"Scott also fails to establish prejudice. Indeed, the record suggests that Scott's consultation with his family brought his desires more in line with defense counsel's advice; when Scott returned, he announced that he no longer wanted to call several witnesses to testify, including himself. (R. 812-813.)"
(C. 31-33.) The record on direct appeal supports the circuit court's findings, and we adopt them as part of this opinion. It is clear from the direct-appeal record that Scott's trial counsel and Scott were in disagreement as to whether to call certain witnesses and whether Scott should testify. The direct-appeal record also indicates that the trial court instructed Scott to discuss the matter with two of his family members outside of the presence of defense counsel after ascertaining that the family members agreed with defense counsel's advice that Scott not testify and that the witnesses not be called at trial. Additionally, as we held in Part III.B. of this opinion, Scott's Sixth Amendment right to counsel was not implicated by the underlying events at trial. Thus, Scott is not entitled to any relief on his claim that trial counsel was ineffective in this regard.
D.
Scott further argues that counsel was ineffective at the penalty phase of his trial.
"When reviewing claims of ineffective assistance of counsel during the penalty *1260 phase of a capital trial we apply the following legal standards.
" 'When the ineffective assistance claim relates to the sentencing phase of the trial, the standard is whether there is "a reasonable probability that, absent the errors, the sentencer-including an appellate court, to the extent it independently reweighs the evidence-would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Strickland [v. Washington], 466 U.S. [668,] at 695, 104 S.Ct. [2052,] at 2069 [ (1984) ].'
" Stafford v. Saffle, 34 F.3d 1557, 1564 (10th Cir.1994).
"In Wiggins v. Smith, 539 U.S. 510 (2003), the United States Supreme Court in reviewing a claim of ineffective assistance of counsel at the penalty phase of a capital trial, stated:
" 'In Strickland [v. Washington, 466 U.S. 668 (1984) ], we made clear that, to establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694. In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence.'
" 539 U.S. at 534.
" ' "The reasonableness of counsel's investigation and preparation for the penalty phase, of course, often depends critically upon the information supplied by the defendant. E.g. Commonwealth v. Uderra, 550 Pa. 389, 706 A.2d 334, 340-41 (1998) (collecting cases). Counsel cannot be found ineffective for failing to introduce information uniquely within the knowledge of the defendant and his family which is not provided to counsel." '
" Waldrop v. State, 987 So.2d 1186, 1195 (Ala.Crim.App.2007), quoting Commonwealth v. Bond, 572 Pa. 588, 609-10, 819 A.2d 33, 45-46 (2002).
" ' "A defense attorney is not required to investigate all leads, however, and 'there is no per se rule that evidence of a criminal defendant's troubled childhood must always be presented as mitigating evidence in the penalty phase of a capital case.' " Bolender [v. Singletary], 16 F.3d [1547,] at 1557 [ (11th Cir.1994) ] (footnote omitted)(quoting Devier v. Zant, 3 F.3d 1445, 1453 (11th Cir.1993), cert. denied, [513] U.S. [1161], 115 S.Ct. 1125, 130 L.Ed.2d 1087 (1995) ). "Indeed, '[c]ounsel has no absolute duty to present mitigating character evidence at all, and trial counsel's failure to present mitigating evidence is not per se ineffective assistance of counsel.' " Bolender, 16 F.3d at 1557 (citations omitted).'
" Marek v. Singletary, 62 F.3d 1295, 1300 (11th Cir.1995)."
Davis v. State, 44 So.3d 1118, 1137-38 (Ala.Crim.App.2009).
1.
Scott asserts that trial counsel did not adequately discover or present mitigating evidence at the penalty phase of his trial. Scott's contentions include evidence of his childhood, psychological issues, and drug use.
The circuit court summarily denied this claim, finding:
"The petition alleges that counsel did not spend enough time on the investigation, resulting in the failure to uncover *1261 numerous documents and interview 'numerous individuals.' (Pet. at para. 198-200) However, the petition does not allege facts demonstrating that a reasonable investigation should have led to the acquisition of these records and interviews with these individuals, fails to identify which individuals should have been contacted and what they should have been asked, and fails to specifically describe what mitigating information would have been attained that could have overcome the serious aggravation in this case. Accordingly, Scott has failed to plead sufficient facts to prove deficient performance or prejudice under Strickland."
(C. 35.) The circuit court further found:
"The petition alleges a number of traumatic events in Scott's past and family history, but repeatedly fails to explain what reasonable investigation would have led to the discovery of these facts and fails to explain what witness or documents would have proved these events to the jury. Though the petition states there was 'reason to believe' Scott was molested (Pet. at para. 202), it fails to provide any time period for or description of the abuse, fails to explain how trial counsel should have discovered this information, and does not suggest how it would have been presented to the jury. Similarly, the petition suggests a psychologist should have testified about sexual abuse by Scott's grandfather (R. 205), but does not identify a psychologist that was available to testify and does not allege what the expert would have told the jury. The claim also fails to demonstrate that, had the evidence been presented, it would have been likely to change the result of the sentencing determination. Accordingly, Scott has failed to plead sufficient facts to prove deficient performance or prejudice under Strickland."
(C. 36-37.) Additionally, the circuit court's order indicates the following:
"Though the petition implies a psychologist should have testified about Scott's mental or emotional disturbance, it does not identify a psychologist that was available to testify and does not allege what the expert would have opined regarding Scott's psychological problems and history. This pleading failure leaves this Court unable to determine whether psychological testimony would have been likely to change the result of the sentencing determination. Accordingly, Scott has failed to plead sufficient facts to prove deficient performance or prejudice under Strickland."
(C. 39-40.) Finally, the circuit court found that the petition did not assert specific or sufficient facts indicating that a "reasonable investigation would have uncovered the drug use or to state how this information could have been presented to the jury." (C. 40.)
The above-quoted excerpts from the circuit court's findings are supported by the record and are adopted for purposes of this opinion. The petition did not set out sufficient or specific facts to meet Scott's burden of pleading as to either prong of the Strickland test. Therefore, summary denial of these claims was proper.
2.
Scott also asserts that counsel was ineffective at the penalty phase for not objecting to allegedly improper findings of fact made during the sentencing phase. Specifically, Scott argues that counsel should have objected because, he claims, the trial court violated the principles espoused in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), by finding the existence of an aggravating circumstance *1262 that was not presented to the jury. The trial court instructed the jury at sentencing on two aggravating circumstances: (1) that Scott had previously been convicted of a felony involving the use or threat of violence to another person, and (2) that the present capital offense was committed during the course of a first-degree rape. The trial court did not instruct the jury on a third aggravating circumstance: that the offense was especially heinous, atrocious, or cruel as compared to other capital offenses. In its sentencing order, however, the trial court considered and found the existence of that third aggravating circumstance even though it had not been presented to the jury. Scott contends that counsel should have objected to the trial court's inclusion of this aggravating circumstance in its sentencing order.
In Ex parte Waldrop, 859 So.2d 1181 (Ala.2002), the Alabama Supreme Court stated:
"Waldrop claims that the trial court's determination that the murders were especially heinous, atrocious, or cruel as compared to other capital offenses-an aggravating circumstance under Ala.Code 1975, § 13A-5-49(8) -is a factual determination that under Ring must be made by the jury. However, Ring and Apprendi [v. New Jersey, 530 U.S. 466 (2000),] do not require that the jury make every factual determination; instead, those cases require the jury to find beyond a reasonable doubt only those facts that result in 'an increase in a defendant's authorized punishment ...' or ' "expose[ ] [a defendant] to a greater punishment...." ' Ring, 536 U.S. at 602, 122 S.Ct. at 2439, 2440 (quoting Apprendi, 530 U.S. at 494, 120 S.Ct. 2348 ). Alabama law requires the existence of only one aggravating circumstance in order for a defendant to be sentenced to death. Ala.Code 1975, § 13A-5-45(f). The jury in this case found the existence of that one aggravating circumstance: that the murders were committed while Waldrop was engaged in the commission of a robbery. At that point, Waldrop became 'exposed' to, or eligible for, the death penalty. The trial court's subsequent determination that the murders were especially heinous, atrocious, or cruel is a factor that has application only in weighing the mitigating circumstances and the aggravating circumstances, a process that we held earlier is not an 'element' of the offense."
859 So.2d at 1190. Alabama courts have repeatedly held that a jury conviction for murder made capital because it was committed during the course of a rape satisfies the Ring requirement that a jury determine the existence of an aggravating circumstance necessary for the imposition of the death penalty. See, e.g., Brooks v. State, 929 So.2d 491 (Ala.Crim.App.2005). Here, the jury of necessity unanimously found that the murder was committed during the course of a rape. Thus, given that the jury verdict alone satisfied the Ring requirements, there was no basis for counsel to object on the grounds Scott now complains of. See Ex parte Waldrop, supra; Clark v. State, 896 So.2d 584, 657 (Ala.Crim.App.2000) ("Because the maximum sentence Clark could receive based on the jury's guilt-phase verdict alone was death, the trial court's finding of the additional aggravating circumstance that the murder was especially heinous, atrocious, or cruel was a factor that had application only in the process of weighing the aggravating and the mitigating circumstances, a process that is not a factual finding within the purview of Ring and Apprendi."). It is well settled that "counsel could not be ineffective for failing to raise a baseless objection." Bearden v. State, 825 So.2d at 872.
*1263 The circuit court found in its order summarily denying the petition:
"The propriety of Scott's sentence was raised and addressed on direct appeal. The court stated that
" 'Alabama courts have rejected the claim that only the jury can determine whether an aggravating circumstance exists. E.g., Ex parte Hodges, 856 So.2d 936, 944-45 (Ala.2003) ; Ex parte Waldrop, 859 So.2d 1181, 1188 (Ala.2002) ; Yeomans v. State, 898 So.2d 878, 897 (Ala.Crim.App.2004) ; Lewis v. State, 889 So.2d 623, 703 (Ala.Crim.App.2003). No error occurred when the trial court found the existence of an aggravating circumstance that was not first submitted to the jury.'
" Scott, 937 So.2d at 1083. The Court also reaffirmed that the Alabama capital sentencing statute is consistent with Ring. Scott, 937 So.2d at 1086-87 (citing Waldrop, 859 So.2d 1181 ). Trial counsel cannot be ineffective for failing to raise a meritless claim. Magwood v. State, 689 So.2d 959, 979 (Ala.Crim.App.1996) ('None of the issues in Magwood's petition have merit and counsel cannot be ineffective for not raising meritless issues.'). This claim is summarily denied under Rule 32.7(d) of the Alabama Rules of Criminal Procedure."
(C. 42-43.) We adopt the circuit court's findings for purposes of this opinion.[5] Summary denial of this claim was clearly proper under Rule 32.7(d), Ala.R.Crim.P.
E.
Scott also contends that he was denied the effective assistance of counsel on appeal. Specifically, he argues that counsel should have challenged what he contends was the trial court's interference with his right to counsel (the substantive issue addressed in Part III.B. of this opinion), and should have raised the denial of funds for a mitigation expert.
With regard to the former, Scott failed to meet the requirements of Rule 28(a)(10), Ala.R.App.P., which requires that an argument contain "the contentions of the appellant/petitioner with respect to the issues presented, and the reasons therefor, with citations to the cases, statutes, other authorities, and parts of the record relied on." "Recitation of allegations without citation to any legal authority and without adequate recitation of the facts relied upon has been deemed a waiver of the arguments listed." Hamm v. State, 913 So.2d 460, 486 (Ala.Crim.App.2002). "An appellate court will consider only those issues properly delineated as such and will not search out errors which have not been properly preserved or assigned. This standard has been specifically applied to briefs containing general propositions devoid of delineation and support from authority or argument." Ex parte Riley, 464 So.2d 92, 94 (Ala.1985) (citations omitted). "When an appellant fails to cite any authority for an argument on a particular issue, this Court may affirm the judgment as to that issue, for it is neither this Court's duty nor its function to perform an appellant's legal research."
*1264 City of Birmingham v. Business Realty Inv. Co. , 722 So.2d 747, 752 (Ala.1998). Scott failed to cite any legal authority to support his contention that appellate counsel was ineffective for not raising this claim. Further, the underlying substantive claim was considered and rejected on the merits in this Court's plain-error review on direct appeal, and by this Court in Part III.B., above. Because the underlying claim is clearly without merit, counsel was not ineffective for not raising the claim on appeal. See generally Bearden v. State, 825 So.2d at 872 ("[C]ounsel could not be ineffective for failing to raise a baseless objection.").
With regard to Scott's claim that appellate counsel was ineffective for not challenging the trial court's denial of funds for a mitigation expert, the circuit court denied this claim as follows:
"This claim is insufficiently pleaded. Though the petition states that Alabama law requires 'the disbursement of mitigation-expert funds where the defendant makes the required showing' (Pet. at para. 234, 230), it fails to lay out the legal standard for evaluating funds requests; fails to argue, with citations, that the record demonstrates that Scott can meet that standard; and fails to provide argument demonstrating that the circuit court reversibly erred. For that matter, the claim does not even allege, much less demonstrate via record citation, that the trial court even ruled upon the motion, suggesting that there may not even be a reviewable order that appellate counsel could have challenged. (Pet. at para. 229) Accordingly, Scott has failed to plead sufficient facts to prove deficient performance or prejudice under Strickland. See Ala. R.Crim. P. 32.3, 32.6(d) ; Williams [v. State], 783 So.2d 108,] 129-30 [ (Ala.Crim.App.2000) ]. This claim is summarily denied.
"The claim is also without merit because the record does not support a favorable decision by the Court of Criminal Appeals. As Scott admits, the record does not contain a ruling on the motion for funds for an investigator. (Pet. at para. 229) The Court of Criminal Appeals confronted an identical situation on direct appeal in Quick v. State, 825 So.2d 246 (Ala.Crim.App.2001). The court held:
" 'As to the appellant's claim that he was entitled to funds to hire an investigator, the appellant in his brief to this Court admits that the record is unclear as to whether the trial court denied this request, because there is no ruling contained in the record on the motion. No objection was made to the failure to rule, if there was such a failure, at trial; therefore, any error must be reviewed pursuant to the plain-error rule, Rule 45A, Ala.R.App.P. It is clear that error cannot be predicated on a silent record, nor will this Court predicate error on matters that are not shown by the record. Smelcher v. State, 520 So.2d 229, 233 (Ala.Crim.App.1987). " 'Where the record is silent on appeal, it will be presumed that what ought to have been done was not only done but rightly done.' Jolly v. State, 405 So.2d 76 (Ala.Crim.App.1981) ; Watson v. State, 398 So.2d 320 (Ala.Crim.App.1980), writ denied, 398 So.2d 332 (Ala.), cert. denied, 452 U.S. 941 (1981)." Owens v. State, 597 So.2d 734, 736 (Ala.Crim.App.1992). Because this argument raised by the appellant is based on speculation and is unsupported by the record, this claim does not rise to the level of plain error.'
" Id. at 259 (emphasis added). Similarly, the silent record in the present case would have prevented appellate counsel *1265 from receiving any relief had he argued the mitigation expert funds claim on direct appeal. Appellate counsel 'is not obliged to raise issues reasonably considered to be without merit.' Bell [v. State], 518 So.2d [840,] 847 [ (Ala.Crim.App.1987) ]. This claim is therefore summarily denied under Rule 32.7(d) of the Alabama Rules of Criminal Procedure."
(C. 54-56.)
Although the circuit court relied upon Williams v. State, 783 So.2d 108 (Ala.Crim.App.2000), which has been overruled by Ex parte Taylor, 10 So.3d 1075 (Ala.2005), we do not find that fatal. First, nothing in the circuit court's order here indicates that its order relied upon the language in Williams that was rejected in Ex parte Taylor, i.e., that a finding of no plain error on direct appeal automatically precludes the possibility of any finding of prejudice under Strickland. Second, this Court has affirmed the denial of Rule 32 petitions when the circuit court erroneously relied on Williams. See Bush v. State, 92 So.3d 121 (Ala.Crim.App.2009), and the cases cited therein. Here, as in Bush, the petition was not pleaded sufficiently or with specificity to meet Scott's burden of pleading facts to indicate that counsel was ineffective for not raising this claim on appeal. See Rules 32.3 and 32.6(b), Ala.R.Crim.P.[6]
F.
Finally, Scott claims that summary denial of his claim that death by lethal injection, as applied in Alabama, constitutes cruel and unusual punishment. He argues that the circuit court improperly found the claim to be subject to the procedural bars in Rule 32.2(a)(3) and (5), and insufficiently pleaded.
The circuit court found this claim to be procedurally barred by Rule 32.2(a)(3), to the extent that it raised the same claim addressed by this Court's plain-error review on direct appeal; the circuit court further found the claim barred by Rule 32.2(a)(5), to the extent that the petition expanded the allegation to challenge lethal injection as applied by Alabama. With regard to Scott's claim that the application of Rules 32.2(a)(3) and (5) was improper, we note that he did not present any facts in his petition explaining why the present Rule 32 petition was the proper vehicle in which to raise this claim, nor did he present any argument in his motion to reconsider the denial of his petition that the application of the procedural bars was improper. Thus, the additional facts he now provides on appeal are not properly before this Court. See Bearden v. State, 825 So.2d 868, 872 (Ala.Crim.App.2001) ("Although Bearden attempts to include more specific facts regarding his claims of ineffective assistance of counsel in his brief to this Court, those allegations are not properly before this Court for review because Bearden did not include them in his original petition before the circuit court.").
Further, Scott's petition contains only general statements of the law and conclusory allegations that death by lethal injection as applied in Alabama is cruel and *1266 unusual punishment. Scott did not allege in his petition that the lethal-injection procedure in Alabama, if properly performed, subjects a death-row inmate to an unacceptable or unconscionable level of pain. See McNabb v. State, 991 So.2d 313 (Ala.Crim.App.2007). Nor did Scott present any individualized allegations that lethal injection would be cruel and unusual punishment if performed on him. See Sharifi v. State, 993 So.2d 907 (Ala.Crim.App.2008). Thus, we find no error in the circuit court's summarily denying this claim pursuant to the pleading requirements in Rules 32.3 and 32.6(b), Ala.R.Crim.P.
Finally, as the circuit court noted in its order, the claim is without merit. Although the circuit court cited no legal authority for this conclusion, we note simply that similar claims have been repeatedly rejected by the appellate courts of Alabama. As this Court recently stated:
" '[C]ourts have repeatedly held that the death penalty is not per se cruel and unusual punishment and that electrocution is not a cruel and unusual method of capital punishment. See Zant v. Stephens, 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) ; Proffitt v. Florida, 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976) ; Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) ; Williams v. State, 627 So.2d 985 (Ala.Crim.App.1991), aff'd, 627 So.2d 999 (Ala.1993), cert. denied, 511 U.S. 1012, 114 S.Ct. 1387, 128 L.Ed.2d 61 (1994) ; Boykin v. State, 281 Ala. 659, 207 So.2d 412 (1968), rev'd on other grounds, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).'
" Wynn v. State, 804 So.2d 1122, 1148 (Ala.Crim.App.2000). Also, in Ex parte Belisle, 11 So.3d 323, 339 (Ala.2008), the Alabama Supreme Court addressed the United States Supreme Court's decision in Baze v. Rees, 553 U.S. 35, 128 S.Ct. 1520, 170 L.Ed.2d 420 (2008), and 'conclude[d] that Alabama's use of lethal injection as a method of execution does not violate the Eighth Amendment to the United States Constitution.' "
Newton v. State, 78 So.3d 458, 476 (Ala.Crim.App.2009).
For these reasons, Scott is entitled to no relief on this claim.
Based on the foregoing, the judgment of the circuit court is affirmed.
AFFIRMED.
Wise, P.J., and Welch, Windom, and Kellum, JJ., concur.

Scott does not reargue the following claims asserted in his petition: that a number of comments by the prosecutor at various stages of the trial were improper; that counsel was ineffective at the penalty phase for not seeking a second competency hearing; and that appellate counsel was ineffective for not arguing on appeal that Scott was not competent to stand trial and that he was entitled to relief based upon prosecutorial misconduct. Those claims Scott presented in his petitions but does not pursue on appeal are deemed to be abandoned. See, e.g., Brownlee v. State, 666 So.2d 91, 93 (Ala.Crim.App.1995) ("We will not review issues not listed and argued in brief.").

Scott does not argue on appeal that the circuit court erred in denying his discovery request.

The State repeatedly asserted that Scott's claims were barred, were not pleaded, or did not raise a claim upon which relief could be granted. Further, the State averred in its answer that "Scott is not entitled to either an evidentiary hearing or relief" on those claims in his petition that were procedurally barred or insufficiently pleaded. (C. 387.)

Although Scott attempts to include more specific facts in his brief on appeal, those facts are not properly before this Court for review because they were not included in his petition. See, e.g., Bearden v. State, 825 So.2d 868, 872 (Ala.Crim.App.2001) ("Although Bearden attempts to include more specific facts regarding his claims of ineffective assistance of counsel in his brief to this Court, those allegations are not properly before this Court for review because Bearden did not include them in his original petition before the circuit court.").
FN"FN[3] Defense counsel stated that he was 'renewing' the objection to consolidation, but we find no record of an objection prior to the first day of trial.
FN"FN[4] Latonya Sager was 10 years old. Latrice Wright's date of birth is not in the record but she testified at the trial that she was 20 years old, and the trial was held three years after the crimes were committed. Therefore, she was approximately 17 years old at the time of the crime."

Scott cites Ex parte Taylor, 10 So.3d 1075 (Ala.2005), for the proposition that a finding of no plain error as to an issue on direct appeal does not automatically foreclose the possibility of prejudice under Strickland. This proposition is correct. Here, however, there was no error-plain, preserved, or otherwise-as to the underlying issue, i.e., whether a trial court may find an aggravating circumstance not submitted to the jury. Thus, the circuit court's reliance on the opinion on direct appeal does not conflict with the principles espoused in Ex parte Taylor.

Scott has attached to his brief an appendix purporting to be a petition for postconviction relief filed by Michael Jeffrey Land. According to Scott, the petition is the Rule 32 petition discussed in Ex parte Land, 775 So.2d 847 (Ala.2000) (granting petition for a writ of mandamus ordering discovery in regard to Land's petition for postconviction relief). However, it is well settled that "attachments to briefs are not considered part of the record and therefore cannot be considered on appeal."Huff v. State, 596 So.2d 16, 19 (Ala.Crim.App.1991). Because the appendix in Scott's petition is not contained in the record before this Court, we do not consider that petition on appeal.