[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1183 
The petitioner, Bobby Wayne Waldrop, was convicted of three counts of capital murder: two counts of murder made capital because it was committed during a robbery in the first degree, see Ala. Code 1975, § 13A-5-40(a)(2), and one count of murder made capital because two or more persons were murdered by one act or pursuant to one scheme or course of conduct, see Ala. Code 1975, § 13A-5-40(a)(10). On April 25, 2002, this Court granted Waldrop's petition for certiorari review to determine whether the trial court's sentencing order stated sufficient reasons for overriding the jury's recommendation of life imprisonment without the possibility of parole, as required by this Court's instructions in Ex parte Taylor, 808 So.2d 1215 (Ala. 2001), cert. denied, 534 U.S. 1086, 122 S.Ct. 824 (2002). On June 24, 2002, the United States Supreme Court issued its decision in Ring v. Arizona,536 U.S. 584, 122 S.Ct. 2428 (2002). This Court then ordered the parties to submit supplemental briefs addressing the impact of Ring and invited the Equal Justice Initiative of Alabama, the Alabama District Attorneys Association, and the Alabama Criminal Defense Lawyers Association to file amicus curiae briefs on the same issues.[1] Oral arguments on the case were heard on September 10, 2002. We affirm.
 Facts and Procedural History
The evidence at trial revealed the following. Waldrop and his wife, Clara, resided with Waldrop's grandparents, Sherrell Prestridge and Irene Prestridge. Sherrell had heart and hip problems and had difficulty walking. Irene was bedridden, blind, and suffered from diabetes. Because of the Prestridges' numerous medical problems, the living room of their house had been converted into a bedroom with two hospital beds. Testimony at trial indicated that Waldrop knew that his grandmother and grandfather received Social Security checks before the third day of each month.
Between 10:30 a.m. and 2:00 p.m. on April 5, 1998, Waldrop and Clara left the Prestridges' house and checked into a hotel in Anniston. That same day, Waldrop and Clara pawned Sherrell's lawn mower and Waldrop smoked an undetermined amount of crack cocaine. Later that evening, Waldrop and Clara returned to the Prestridges' house. Testimony at trial indicated that Waldrop was not high on crack cocaine when he and Clara returned to the house. While Waldrop was in his grandparents' bedroom, Waldrop and Sherrell began arguing over money. In a statement Waldrop made to the police, which was introduced at trial, Waldrop stated:
 "I went into the kitchen and got the knife and [came] back. [Sherrell] pushed me and he saw the knife and that's when I [swung] the knife at his *Page 1185 
throat and he started to bleed from the throat real bad. [Sherrell] was at the foot of the bed and I started to stab him and I had the knife in my left hand and I cut myself in the hand. I got on top of him [on] the floor and started to choke him, and he wouldn't stop breathing, so I cut a little more on both sides of his neck. It was [too] late. I stuck the knife into his back and I figured it would hit his lungs and he'd stop breathing. I just wanted to finish what I started. It looked like he was suffering."
(C. 183.) Sherrell suffered 43 stab wounds to his head, neck, back, and chest; he died as a result of his injuries.
Waldrop's grandmother, Irene, had been lying in her bed in the same room while Waldrop attacked his grandfather. She heard Waldrop kill her husband, and she was screaming throughout the incident. After he killed Sherrell, Waldrop instructed Clara to kill Irene. Clara cut and stabbed Irene twice. Waldrop then took the knife from Clara. Testimony at trial indicated that Irene told Waldrop that she loved him before he placed a pillow over her face and stabbed her in the chest, throat, and shoulders until she died. Irene suffered a total of 38 stab and cut wounds. Waldrop and Clara took Sherrell's wallet, and they left to buy drugs, ultimately driving to Georgia where they were apprehended.
Waldrop was charged with two counts of murder made capital because the murder was committed during a robbery in the first degree and one count of murder made capital because two or more persons were murdered by one act or pursuant to one scheme or course of conduct. At trial, the jury found Waldrop guilty of all three counts. Subsequently, the trial court conducted a sentencing hearing pursuant to Ala. Code 1975, § 13A-5-46. After the sentencing hearing, the jury, by a vote of 10-2, recommended that Waldrop be sentenced to life imprisonment without the possibility of parole. Circuit Judge Dale Segrest overrode the jury's recommendation and sentenced Waldrop to death.
Waldrop appealed to the Court of Criminal Appeals, which, on June 30, 2000, remanded the case for the trial court to reweigh the mitigating circumstances and the aggravating circumstances and to issue a new sentencing order. Waldrop v. State, 859 So.2d 1138 (Ala.Crim.App. 2000). The trial court complied and issued a revised sentencing order, again sentencing Waldrop to death.
On return to remand, the Court of Criminal Appeals noted:
 "Our review of the record indicates that the trial court found the existence of two statutory aggravating circumstances in Waldrop's case: (1) that the murders were committed during the course of a robbery in the first degree, see § 13A-5-49(4), Ala. Code 1975; and (2) that the murders were especially heinous, atrocious, or cruel when compared to other capital offenses, see § 13A-5-49(8), Ala. Code 1975. The trial court found the existence of two statutory mitigating circumstances: (1) that Waldrop had no significant history of prior criminal activity, see § 13A-5-51(1), Ala. Code 1975; and (2) that Waldrop was 19 years old at the time of the offenses, see § 13A-5-51(7), Ala. Code 1975. The trial court did not find the existence of any nonstatutory mitigating circumstances."
Waldrop v. State, 859 So.2d 1138, 1174 (opinion on return to remand). On return to remand, the Court of Criminal Appeals unanimously affirmed Waldrop's conviction and sentence. *Page 1186 
 Discussion I.
Waldrop claims that the United States Supreme Court's opinions in Ringv. Arizona, supra, and Apprendi v. New Jersey, 530 U.S. 466 (2000), mandate that any factual determination required for imposition of the death penalty must be made by the jury, not by the trial court.
In Apprendi, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. In Ring v.Arizona, the Supreme Court tested this principle against Arizona's death-penalty scheme. The defendant in that case, Ring, was convicted of felony murder for a murder that occurred in the course of a robbery:
 "Under Arizona law, Ring could not be sentenced to death, the statutory maximum penalty for first-degree murder, unless further findings were made. The State's first-degree murder statute prescribes that the offense `is punishable by death or life imprisonment as provided by § 13-703.' Ariz. Rev. Stat. Ann. § 13-1105(C) (West 2001). The cross-referenced section, § 13-703, directs the judge who presided at trial to `conduct a separate sentencing hearing to determine the existence or nonexistence of [certain enumerated] circumstances . . . for the purpose of determining the sentence to be imposed.' § 13-703(C) (West Supp. 2001). The statute further instructs: `The hearing shall be conducted before the court alone. The court alone shall make all factual determinations required by this section or the constitution of the United States or this state.' Ibid.
 "At the conclusion of the sentencing hearing, the judge is to determine the presence or absence of the enumerated `aggravating circumstances' and any `mitigating circumstances.' The State's law authorizes the judge to sentence the defendant to death only if there is at least one aggravating circumstance and `there are no mitigating circumstances sufficiently substantial to call for leniency.' § 13-703(F)."
Ring, 536 U.S. at 592-93, 122 S.Ct. at 2434-35 (footnotes omitted; alterations and omissions in original). The trial court had held a sentencing hearing, in which it heard evidence not previously heard by the jury, including the testimony of one of Ring's accomplices. After the hearing, the trial court rendered a special verdict in which it found that Ring had shot and killed the victim. It also determined that two aggravating circumstances existed: (1) that "Ring committed the offense in expectation of receiving something of `pecuniary value,'" and (2) that "the offense was committed `in an especially heinous, cruel or depraved manner.'" 536 U.S. at 594, 122 S.Ct. at 2435. After determining that the mitigating circumstance in the case — Ring's "minimal" criminal record — did not call for leniency, the trial court sentenced Ring to death. 536 U.S. at 595, 122 S.Ct. at 2435.
On appeal, Ring claimed that, under Apprendi, the trial court in his case could not determine the existence of facts that could elevate his possible punishment to death. The State of Arizona, on the other hand, argued that Ring's sentence did not run afoul of Apprendi because "Ring was convicted of first-degree murder, for which Arizona law specifies `death or life imprisonment' as the only sentencing options . . . Ring was therefore sentenced within the range of punishment authorized by the jury verdict." Ring, 536 U.S. at 603, *Page 1187 122 S.Ct. at 2440. The Supreme Court held, however, that the relevant inquiry in such a situation "`is one not of form, but of effect.'"536 U.S. at 602, 122 S.Ct. at 2439 (quoting Apprendi, 530 U.S. at 494).
 "In effect, `the required finding [of an aggravated circumstance] expose[d] [Ring] to a greater punishment than that authorized by the jury's guilty verdict.'[Apprendi, 530 U.S. at 494]; see [State v. Ring] 200 Ariz. [267], at 279, 25 P.3d [1139], at 1151 [(2001)]. The Arizona first-degree murder statute `authorizes a maximum penalty of death only in a formal sense,' Apprendi, 530 U.S., at 541, 120 S.Ct. 2348 (O'Connor, J., dissenting), for it explicitly cross-references the statutory provision requiring the finding of an aggravating circumstance before imposition of the death penalty. See § 13-1105(C) (`First degree murder is a class 1 felony and is punishable by death or life imprisonment as provided by § 13-703.' (emphasis added)).
 "If Arizona prevailed on its opening argument, Apprendi would be reduced to a `meaningless and formalistic' rule of statutory drafting. See 530 U.S., at 541, 120 S.Ct. 2348 (O'Connor, J., dissenting)."
Ring, 536 U.S. at 604, 122 S.Ct. at 2440-41 (some alterations in original).
The Supreme Court thus overruled Walton v. Arizona, 497 U.S. 639
(1990), in which it had previously upheld Arizona's sentencing scheme, "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for imposition of the death penalty." Ring, 536 U.S. at 609, 122 S.Ct. at 2443. Furthermore, "[b]ecause Arizona's enumerated aggravating factors operate as `the functional equivalent of an element of a greater offense,'" the Sixth Amendment required those factors to be found by a jury. Id. (quotingApprendi, 530 U.S. at 494 n. 19). Because the trial judge, and not the jury, undertook the "factfinding necessary" to put Ring to death, the Supreme Court reversed the judgment of the Arizona Supreme Court. Id.
 A.
Waldrop argues that under Alabama law a defendant cannot be sentenced to death unless, after an initial finding that the defendant is guilty of a capital offense, there is a second finding: (1) that at least one statutory aggravating circumstance exists, see Ala. Code 1975, §13A-5-45(f), and (2) that the aggravating circumstances outweigh the mitigating circumstances, see Ala. Code 1975, § 13A-5-46(e)(3). Those determinations, Waldrop argues, are factual findings that under Ring must be made by the jury and not the trial court. Because, Waldrop argues, the trial judge in his case, and not the jury, found that two aggravating circumstances existed and that those aggravating circumstances outweighed the mitigating circumstances, Waldrop claims that his Sixth Amendment right to a jury trial was violated. We disagree.
It is true that under Alabama law at least one statutory aggravating circumstance under Ala. Code 1975, § 13A-4-49, must exist in order for a defendant convicted of a capital offense to be sentenced to death. See Ala. Code 1975, § 13A-5-45(f)("Unless at least one aggravating circumstance as defined in Section 13A-5-49 exists, the sentence shall be life imprisonment without parole."); Johnson v. State, 823 So.2d 1, 52
(Ala.Crim.App. 2001) (holding that in order to sentence a capital defendant to death, the sentencer "`must determine the existence of at least one of *Page 1188 
the aggravating circumstances listed in [Ala. Code 1975,] § 13A-5-49'" (quoting Ex parte Woodard, 631 So.2d 1065, 1070 (Ala.Crim.App. 1993))). Many capital offenses listed in Ala. Code 1975, § 13A-5-40, include conduct that clearly corresponds to certain aggravating circumstances found in § 13A-5-49:
 "For example, the capital offenses of intentional murder during a rape, § 13A-5-40(a)(3), intentional murder during a robbery, § 13A-5-40(a)(2), intentional murder during a burglary, § 13A-5-40(a)(4), and intentional murder during a kidnapping, § 13A-5-40(a)(1), parallel the aggravating circumstance that '[t]he capital offense was committed while the defendant was engaged . . . [in a] rape, robbery, burglary or kidnapping,' § 13A-5-49(4)."
Ex parte Woodard, 631 So.2d 1070, -71 (Ala. 1993) (alterations and omission in original).
Furthermore, when a defendant is found guilty of a capital offense, "any aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentencing hearing." Ala. Code 1975, § 13A-5-45(e); see also Ala. Code 1975, § 13A-5-50 ("The fact that a particular capital offense as defined in Section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence."). This is known as "double-counting" or "overlap," and Alabama courts "have repeatedly upheld death sentences where the only aggravating circumstance supporting the death sentence overlaps with an element of the capital offense." Exparte Trawick, 698 So.2d 162, 178 (Ala. 1997); see also Coral v. State,628 So.2d 954, 965 (Ala.Crim.App. 1992).[2]
Because the jury convicted Waldrop of two counts of murder during a robbery in the first degree, a violation of Ala. Code 1975, §13A-5-40(a)(2), the statutory aggravating circumstance of committing a capital offense while engaged in the commission of a robbery, Ala. Code 1975, § 13A-5-49(4), was "proven beyond a reasonable doubt." Ala. Code 1975, § 13A-5-45(e); Ala. Code 1975, § 13A-5-50. Only one aggravating circumstance must exist in order to impose a sentence of death. Ala. Code 1975, § 13A-5-45(f). Thus, in Waldrop's case, the jury, and not the trial judge, determined the existence of the "aggravating circumstance necessary for imposition of the death penalty."Ring, 536 U.S. at 609, 122 S.Ct. at 2443. Therefore, the findings reflected in the jury's verdict alone exposed Waldrop to a range of punishment that had as its maximum the death penalty. This is all Ring andApprendi require.
 B.
Waldrop also claims that Ring and Apprendi require that the jury, and not the trial court, determine whether the aggravating circumstances outweigh the mitigating circumstances. See Ala. Code 1975, *Page 1189 
§§ 13A-5-46(e), 13A-5-47(e), and 13A-5-48. Specifically, Waldrop claims that the weighing process is a "finding of fact" that raises the authorized maximum punishment to the death penalty. Waldrop and several of the amici curiae claim that, after Ring, this determination must be found by the jury to exist beyond a reasonable doubt. Because in the instant case the trial judge, and not the jury, made this determination, Waldrop claims his Sixth Amendment rights were violated.
Contrary to Waldrop's argument, the weighing process is not a factual determination. In fact, the relative "weight" of aggravating circumstances and mitigating circumstances is not susceptible to any quantum of proof. As the United States Court of Appeals for the Eleventh Circuit noted, "While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard . . . the relative weight is not." Ford v.Strickland, 696 F.2d 804, 818 (11th Cir. 1983). This is because weighing the aggravating circumstances and the mitigating circumstances is a process in which "the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence." Tuilaepa v.California, 512 U.S. 967, 972 (1994). Moreover, the Supreme Court has held that the sentencer in a capital case need not even be instructed as to how to weigh particular facts when making a sentencing decision. SeeHarris v. Alabama, 513 U.S. 504, 512 (1995) (rejecting "the notion that `a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required'" (quotingFranklin v. Lynaugh, 487 U.S. 164, 179 (1988)) and holding that "the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer").
Thus, the weighing process is not a factual determination or an element of an offense; instead, it is a moral or legal judgment that takes into account a theoretically limitless set of facts and that cannot be reduced to a scientific formula or the discovery of a discrete, observable datum. See California v. Ramos, 463 U.S. 992, 1008 (1983) ("Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, . . . the jury[3] then is free to consider a myriad of factors to determine whether death is the appropriate punishment."); Zant v. Stephens, 462 U.S. 862, 902 (1983) (Rehnquist, J., concurring in the judgment) ("sentencing decisions rest on a far-reaching inquiry into countless facts and circumstances and not on the type of proof of particular elements that returning a conviction does").
In Ford v. Strickland, supra, the defendant claimed that "the crime of capital murder in Florida includes the element of mitigating circumstances not outweighing aggravating circumstances and that the capital sentencing proceeding in Florida involves new findings of fact significantly affecting punishment." Ford, 696 F.2d at 817. The United States Court of Appeals for the Eleventh Circuit rejected this argument, holding that "aggravating and mitigating circumstances are not facts or *Page 1190 
elements of the crime. Rather, they channel and restrict the sentencer's discretion in a structured way after guilt has been fixed." 696 F.2d at 818. Furthermore, in addressing the defendant's claim that the State must prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances, the court stated that the defendant's argument
 "seriously confuses proof of facts and the weighing of facts in sentencing. While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see State v. Dixon, 283 So.2d 1, 9 (Fla. 1973), cert. denied, 416 U.S. 943, 94 S.Ct. [1950], 40 L.Ed.2d 295 (1974), and State v. Johnson, 298 N.C. 47, 257 S.E.2d 597, 617-18 (1979), the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party."
696 F.2d at 818. Alabama courts have adopted the Eleventh Circuit's rationale. See Lawhorn v. State, 581 So.2d 1159, 1171 (Ala.Crim.App. 1990) ("while the existence of an aggravating or mitigating circumstance is a fact susceptible to proof, the relative weight of each is not; the process of weighing, unlike facts, is not susceptible to proof by either party"); see also Melson v. State, 775 So.2d 857, 900-901 (Ala.Crim.App. 1999); Morrison v. State, 500 So.2d 36, 45 (Ala.Crim.App. 1985).
Thus, the determination whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact or an element of the offense. Consequently, Ring and Apprendi do not require that a jury weigh the aggravating circumstances and the mitigating circumstances.
 C.
Waldrop claims that the trial court's determination that the murders were especially heinous, atrocious, or cruel as compared to other capital offenses — an aggravating circumstance under Ala. Code 1975, §13A-5-49(8) — is a factual determination that under Ring must be made by the jury. However, Ring and Apprendi do not require that the jury make every factual determination; instead, those cases require the jury to find beyond a reasonable doubt only those facts that result in "an increase in a defendant's authorized punishment. . ." or "`expose [a defendant] to a greater punishment. . . .'" Ring, ___ U.S. at ___,122 S.Ct. at 2439, 2440 (quoting Apprendi, 530 U.S. at 494). Alabama law requires the existence of only one aggravating circumstance in order for a defendant to be sentenced to death. Ala. Code 1975, § 13A-5-45(f). The jury in this case found the existence of that one aggravating circumstance: that the murders were committed while Waldrop was engaged in the commission of a robbery. At that point, Waldrop became "exposed" to, or eligible for, the death penalty. The trial court's subsequent determination that the murders were especially heinous, atrocious, or cruel is a factor that has application only in weighing the mitigating circumstances and the aggravating circumstances, a process that we held earlier is not an "element" of the offense.
 II.
Waldrop argues that, contrary to our holding in Ex parte Taylor,supra, the trial court in this case failed to make specific written findings as to what consideration it gave the jury's advisory verdict. InTaylor, the trial court overrode the jury's advisory verdict of life imprisonment *Page 1191 
without the possibility of parole and sentenced the defendant to death. On appeal, the defendant argued that the trial judge's override of the jury's recommendation was unconstitutional because, the defendant argued, "there is no standard to guide the trial judge in determining whether to accept or to reject the jury's recommended sentence." Taylor, 808 So.2d at 1217 (footnote omitted). We rejected this argument, noting that the United States Supreme Court had held in Harris v. Alabama,supra, "`that the Eighth Amendment does not require the State to define the weight the sentencing judge must accord an advisory jury verdict.'"Taylor, 808 So.2d at 1218 (quoting Harris, 513 U.S. at 512). Although not required by Harris, we noted that Alabama's statutory procedures did
guard against an arbitrary and capricious decision by a trial court in this situation:
 "This Court held in Ex parte Jones, 456 So.2d 380
(Ala. 1984), that the Constitution of the United States does not require the '[adoption of] specific limitations on the trial court's power to override the jury's advisory verdict' and that Alabama's capital-sentencing procedure provides sufficient protection for capital defendants because '[t]he whole catalog of aggravating circumstances must outweigh mitigating circumstances before a trial court may opt to impose the death penalty by overriding the jury's recommendation' of life imprisonment. 456 So.2d at 382. Under Alabama's capital-sentencing procedure, the trial judge must make specific written findings regarding the existence or nonexistence of each aggravating circumstance and each mitigating circumstance offered by the parties. § 13A-5-47(d), Ala. Code 1975. In making these findings, the trial judge must consider a jury's recommendation of life imprisonment without parole. See § 13A-5-47(e), Ala. Code 1975 (`in [weighing the aggravating and mitigating circumstances] the trial court shall consider the recommendation of the jury contained in its advisory verdict'). Construing subsection (e) together with subsection (d), we conclude that the trial judge must state specific reasons for giving the jury's recommendation the consideration he gave it. McCausland v. Tide-Mayflower Moving Storage, 499 So.2d 1378, 1382 (Ala. 1986) (stating that subsections of a statute `should be construed together to ascertain the meaning and intent of each'). Therefore, we hold that Alabama's capital-sentencing procedure does not result in the imposition of the death sentence in an arbitrary and capricious manner in violation of the Fourteenth Amendment."
Taylor, 808 So.2d at 1219 (footnote omitted) (alterations in original).
Taylor was decided after the trial court in Waldrop's case entered its revised sentencing order on remand from the Court of Criminal Appeals, and after the Court of Criminal Appeals affirmed the trial court's order. In post-Taylor cases where the trial court fails sufficiently to state its reasons for overriding a jury's advisory verdict, this Court and the Court of Criminal Appeals have generally remanded the case to allow the trial court to enter a revised sentencing order. See Ex parteCarroll, 852 So.2d 821 (Ala. 2001); Lee v. State, [Ms. CR-00-0084, October 26, 2001] ___ So.2d ___ (Ala.Crim.App. 2001); Dorsey v. State, [Ms. CR-97-1522, May 25, 2001] ___ So.2d ___ (Ala.Crim.App. 2001).
A remand to the trial court is not an option in this case, however, because the trial judge, Judge Dale Segrest, is no longer *Page 1192 
on the bench.[4] Instead, the case would be assigned to a circuit judge who is unfamiliar with the case and who cannot possibly supply Judge Segrest's "specific reasons for giving the jury's recommendation the consideration [Judge Segrest] gave it." 808 So.2d at 1219. Because a remand is not possible, and in order to ensure that the death penalty in this case was not imposed in an arbitrary and capricious manner, this Court must perform its own review of the propriety of the death sentence and determine whether the aggravating circumstances outweigh the mitigating circumstances.
The murders in this case were committed while Waldrop was engaged in a robbery, an aggravating circumstance found by the jury to exist. Waldrop knew that his grandparents received their Social Security benefit checks at the beginning of the month and that Sherrell often kept cash on his person. Waldrop attacked and killed both Sherrell and Irene after arguing with Sherrell over money. Waldrop and Clara then took Sherrell's wallet, bought drugs, and fled to another state.
The murders were also especially heinous, atrocious, or cruel, as compared to other capital cases, another aggravating circumstance. The victims were elderly and in poor health. They suffered numerous, repeated stab and cut wounds in the attack. As Sherrell lay dying, Waldrop choked Sherrell and cut the sides of his already slashed throat. When this did not result in immediate death, Waldrop stabbed Sherrell in the back in an attempt to puncture a lung.
Irene, who was bedridden and blind, was in the room while Waldrop attacked Sherrell and was forced to listen to her grandson viciously stab and strangle her husband to death. She then lay helpless while her grandson ordered Clara to stab her. Before Waldrop stabbed her to death, Irene told Waldrop that she loved him.
We have held that a homicide is especially heinous, atrocious, or cruel when it is "conscienceless or pitiless" and "unnecessarily torturous to the victim." Ex parte Kyzer, 399 So.2d 330, 334 (Ala. 1981). We agree with the Court of Criminal Appeals that the record "more than adequately establishes that, when compared to other capital offenses, the capital murders in this case were especially heinous, atrocious, or cruel."Waldrop v. State, 859 So.2d at 1180 (opinion on return to remand). SeeHocker v. State, 840 So.2d 197, 220 (Ala.Crim.App. 2002) (murder where the defendant stabbed the victim, then repeatedly beat the victim while the victim was incapacitated was especially heinous, atrocious, or cruel); Broadnax v. State, 825 So.2d 134 (Ala.Crim.App. 2002) (upholding the determination that two murders in which the victims were stabbed while lying helpless on the ground and where one victim saw the other victim, his grandmother, being beaten, was especially heinous, atrocious, or cruel); Price v. State, 725 So.2d 1003 (Ala.Crim.App. 1997) (where evidence indicated that the victim was repeatedly stabbed and that he witnessed an attack on his spouse, the trial court did not err in determining that the offense was especially heinous, atrocious, or cruel); Barbour v. State, 673 So.2d 461 (Ala.Crim.App. 1994) (where evidence indicated that the victim was stabbed and that she suffered before her death, the offense was especially heinous, atrocious, or cruel); McNair v. State, 653 So.2d 347, 349 (Ala. Crim App. 1993) (holding a murder to be "conscienceless, pitiless, and unnecessarily torturous" *Page 1193 
where the victim was strangled and repeatedly stabbed).
The trial court concluded that the aggravating circumstances outweighed the mitigating circumstances in this case, i.e., Waldrop's age and the lack of a criminal history. While it is true that Waldrop had no significant prior criminal history and that he was 19 at the time of the murders, those circumstances pale in comparison to the aggravating circumstances, especially in light of the brutal nature of the crime. Thus, we conclude that the trial court gave the mitigating circumstances the correct weight.
We agree with the conclusion reached by the Court of Criminal Appeals:
 "After carefully reviewing the record of the guilt phase, the penalty phase, and the sentencing phase of Waldrop's trial, we find no evidence that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. We conclude that the findings and conclusions of the trial court are abundantly supported by the evidence. We have independently weighed the aggravating circumstances against the statutory and nonstatutory mitigating circumstances, and we concur in the trial court's judgment that death is the appropriate sentence in this case. Considering the crimes committed by Waldrop, we find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases."
859 So.2d at 1181 (opinion on return to remand).
AFFIRMED.
MOORE, C.J., and HOUSTON[1] and HARWOOD, JJ., concur.
STUART, J., concurs specially.
SEE, LYONS, JOHNSTONE, and WOODALL, JJ., concur in part and dissent in part.
[1] Although Waldrop was convicted before the Supreme Court announced its decision in Ring, that Court has previously held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final."Griffith v. Kentucky, 479 U.S. 314, 328 (1987). "By `final,' we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied."Griffith, 479 U.S. at 321 n. 6. Because Waldrop's case was pending on certiorari review when Ring was decided, the new rule announced in that case is applicable to this case. The issue whether Ring retroactively applies to cases that were final when it was decided is not before us.
[2] The United States Supreme Court upheld a similar procedure inLowenfield v. Phelps, 484 U.S. 231, 244-45 (1988) ("The use of `aggravating circumstances' is . . . a means of genuinely narrowing the class of death-eligible persons and thereby channeling the jury's discretion. We see no reason why this narrowing function may not be performed by jury findings at either the sentencing phase of the trial or the guilt phase."). See also Tuilaepa v. California, 512 U.S. 967, 972
(1994) ("The aggravating circumstance may be contained in the definition of the crime or in a separate sentencing factor (or in both).").
[3] The jury in California v. Ramos undertook the role of the sentencer. 463 U.S. at 995 n. 2.
[4] This Court takes judicial notice of the fact that the trial judge in Waldrop's case, Dale Segrest, is no longer serving as an Alabama circuit court judge.
[1] Justice Houston did not attend oral argument in this case held on September 10, 2002; however, on September 18, 2002, he reviewed the videotape of the oral argument.