STUART, Justice.
This Court granted certiorari review of the judgment of the Court of Criminal Appeals affirming Jerry Bohannon’s conviction for capital murder and his sentence of death. We affirm.
Facts and Procedural History
. The evidence presented at trial established the following. Around 7:30 a.m. on December 11, 2010, Jerry Bohannon, Anthony Harvey, and Jerry DuBoise were in the parking lot of the Paradise Lounge, a nightclub in Mobile. The security cameras in the parking lot recorded DuBoise and Harvey talking with Bohannon. After Du-Boise and Harvey had turned and walked several feet away from him, Bohannon reached for a pistol. Apparently, when they heard Bohannon cock the hammer of the pistol, DuBoise and Harvey turned to look at Bohannon. DuBoise and Harvey then ran; Bohannon pursued them, shooting several times. DuBoise and Harvey ran around the corner of the building and when they reappeared they had guns. A gunfight ensued. Harvey was shot in the upper left chest; DuBoise was shot three times in the abdomen. The testimony indicated that, in addition to shooting DuBoise and Harvey, Bohannon pistol-whipped them. Both DuBoise and Harvey died of injuries inflicted by Bohannon.
In June 2011, Bohannon was charged with two counts of capital murder in connection with the deaths. The murders were made capital because two or more persons were killed “by one act or pursuant to one scheme or course of conduct.” § 1 BA—5—40(a)(1), Ala. Code 1975. Following a jury trial, Bohannon was convicted of two counts of capital murder. During the penalty phase, the jury recommended by a vote of 11-1 that Bohannon be sentenced to death; the circuit court sentenced Bohannon to death for each capital-murder conviction. Bohannon appealed. The Court of Criminal Appeals affirmed one of Bohannon’s capital-murder convictions but remanded the case, in light of a double-jeopardy violation, for the circuit court to set aside one of Bohannon’s capital-murder convictions and its sentence. Bohannon v. State, 222 So.3d 457, 523 (Ala.Crim.App.2015). The circuit court vacated one conviction and sentence, and, on return to remand, the Court of Criminal Appeals affirmed Bohannon’s death sentence. Bohannon v. State, 222 So.3d 457, 523 (Ala.Crim.App.2015). Bohannon petitioned this Court for certiorari review of the judgment of the Court of Criminal Appeals. This Court granted Bohannon’s petition to consider four grounds:
—Whether Bohannon’s death sentence must be vacated in light of Hurst v. Florida, 577 U.S. -, 136 S.Ct. 616, 193 L.Ed.2d 504 (2016);
—Whether the circuit court’s characterization of the jury’s penalty-phase determination as a recommendation and as advisory conflicts with Hurst;
—Whether the circuit court committed plain error by allowing the State to question defense character witnesses about Bohannon’s alleged acts on the night of the shooting; and
—Whether the circuit court committed plain error by failing to sua sponte instruct the jury on the victims’ intoxication?
*528 Standard of Review
Bohannon’s case involves only issues of law and the application of the law to the undisputed facts; therefore, our review is de novo. Ex parte Key, 890 So.2d 1056, 1059 (Ala.2003)(“This Court reviews pure questions of law in criminal cases de novo.”), and State v. Hill, 690 So.2d 1201, 1203-04 (Ala.1996).
Discussion
First, Bohannon contends that his death sentence must be vacated in light of the United States Supreme Court’s decision in Hurst.
In 2000, in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the United States Supreme Court held that the United States Constitution requires that any-fact that increases the penalty for a crime above the statutory maximum must be presented to a jury and proven beyond a reasonable doubt. In Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the United States Supreme Court, applying its decision in Apprendi to a capital-murder case, stated that a defendant has a Sixth Amendment light to a “jury determination of any fact on which the legislature conditions an increase in their maximum punishment.” 536 U.S. at 589. Specifically, the Court held that the right to a jury trial guaranteed by the Sixth Amendment required that a jury “find an aggravating circumstance necessary for imposition of the death penalty.” Ring, 536 U.S. at 585. Thus, Ring held that, in a capital casé, the Sixth Amendtnenf right to a jury trial requires that the jury unanimously find beyond a reasonable doubt the existence of at least one aggravating circumstance that would make the defendant eligible for a death sentence.
In Ex parte Waldrop, 859 So.2d 1181 (Ala.2002), this Court considered the constitutionality of Alabama’s capital-sentencing scheme in light of Apprendi and Ring, stating:
“Waldrop argues that under Alabama law a defendant cannot be sentenced to death unless, after an initial finding that the defendant is guilty of a capital offense, there is a second finding: (1) that at least one statutory aggravating, circumstance exists, see Ala. Code 1975, § 13A-5-45(f), and (2) that the aggravating circumstances outweigh the mitigating circumstances, see Ala.. Code 1975, § 13A-5-46(e)(3). Those determinations, Waldrop argues, are factual findings that under Ring must be made by the jury and not the trial court. Because, Waldrop argues, the trial judge in his case, and not the jury, found that two aggravating circumstances existed and that those aggravating circumstances outweighed the mitigating circumstances, Waldrop claims that -his-Sixth Amendment right to a jury trial waviolated. We disagree.
“It is true that under Alabama law at least one statutory aggraváting circumstance under Ala. Code 1975, § 13A-4-49, must exist in order for a defendant convicted of a capital offense to be sentenced to death. See Ala. Code 1975, § 13A-5-45(f)(‘Unless at least one aggravating circumstance as defined in Section 13A-5-49 exists, the sentence shall be life imprisonment without parole.’); Johnson v. State, 823 So.2d 1, 52 (Ala.Crim.App.2001)(holding that in order to sentence a capital defendant to death, the sentencer ‘“must determine the existence of at least one of the aggravating circumstances listed in [Ala. Code 1975,] § 13A-5-49”’ (quoting Ex parte Woodard, 631 So.2d 1065, 1070 (Ala.Crim.App.1993))). Many capital offenses listed in Ala. Code 1975, § 13A- *529 6-40, include conduct that clearly corresponds to certain aggravating circumstances found in § 13A-5-49:
“ ‘For example, the capital offenses of intentional murder during a rápe, § 13A-5-40(a)(3), intentional murder during a robbery, § 13A-5-40(a)(2), intentional murder during a burglary, § 13A-5-40(a)(4), and intentional murder during a kidnapping, § 13A-5-40(a)(l), parallel the aggravating circumstance that “[t]he capital offense was committed while the defendant was engaged ... [in a] rape, robbery, burglary or kidnapping,” § 13A-5-49(4),’
“Ex parte Woodard, 631 So.2d at 1070-71 (alterations and omission in original).
“Furthermore, when a defendant is found guilty of a capital offense, ‘any aggravating circumstance which the verdict -convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentencing hearing.’ Ala. Code 1976, § 13A-5-45(e); see also Ala. Code 1975, § 13A-5-60 (‘The fact that a particular capital offense as defined in Section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in Section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence.’). This is known as ‘double-counting’ or ‘overlap,’ and Alabama courts ‘havé repeatedly upheld death sentences where the only aggravating circumstance supporting the death sentence overlaps with an element of the capital offense.’ Ex parte Trawick, 698 So.2d 162, 178 (Ala.1997); see also Coral v. State, 628 So.2d 954, 966 (Ala.Crim.App.1992).
“Because the jury convicted Waldrop of two counts of murder during a robbery in the first degree, a violation of Ala. Code 1975, § 13A-5^0(a)(2), the statutory aggravating circumstance of committing a capital offense while engaged in the commission of a robbery, Ala. Code 1975, § 13A-5-49(4), was ‘proven beyond a reasonable doubt.’ Ala. Code 1975, § 13A-5-45(e);, Ala. Code 1975, § 13A-5-50, Only one aggravating circumstance must exist in order to impose a sentence of death., Ala. Code 1975, § 13A-5-45(f). Thus, in Waldrop’s case, the jury, and not the trial judge, determined the existence of the ‘aggravating circumstance necessary for imposition of the death penalty.’ Ring, 536 U.S. at 609,122 S.Ct. at 2443. Therefore, the findings reflected in the jury’s verdict alone exposed Waldrop to a range of punishment that had as its maximum the death penalty. This is all Ring and Ap-prendi require.
[[Image here]]
‘Waldrop also claims . that Ring and Apprendi require that the jury, and not the trial court, determine whether the aggravating circumstances outweigh the mitigating circumstances. See Ala, Code 1975, §§ 13A-5~46(e), 13A-5-47(e), and 13A-5-48. Specifically, Waldrop claims that the weighing process is a ‘finding of fact’ that raises the authorized maximum punishment to the death penalty, Wal-drop and several of the amici curiae claim that, after Ring, this determination must be found by the jury to exist beyond a reasonable .doubt. Because in the instant case the trial judge, and not the jury, made this determination, Wal-drop claims his Sixth Amendment rights were violated.
“Contrary to Waldrop’s argument, the weighing process is not a factual determination. In fact, the relative ‘weight’ of aggravating circumstances and mitigat *530 ing circumstances is not susceptible to any quantum- of proof. As the United States Court of Appeals for the Eleventh Circuit noted, ‘While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard ... the relative weight is not.’ Ford v. Strickland, 696 F.2d 804, 818 (11th Cir.1983). This is because weighing the aggravating circumstances and the mitigating circumstances is a process in which ‘the sentencer determines whether a defendant eligible for the death penalty should in fact receive that sentence.’ Tuilaepa v. California, 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). Moreover, the Supreme Court has held that the sentencer in a capital case need not even be instructed as to how to weigh particular facts when making a sentencing decision. See Harris v. Alabama, 513 U.S. 504, 512, 115 S.Ct. 1031, 130 L.Ed.2d 1004 (1995)(rejecting ‘the notion that “a specific method for balancing mitigating and aggravating factors in a capital sentencing proceeding is constitutionally required” ’ (quoting Franklin v. Lynaugh, 487 U.S. 164, 179, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988)) and holding that ‘the Constitution does not require a State to ascribe any specific weight to particular factors, either in aggravation or mitigation, to be considered by the sentencer’).
“Thus, the weighing process is not a factual determination or an element of an offense; instead, it is a moral or legal judgment that takes into account a theoretically limitless set of facts and that cannot be reduced to a scientific formula or the discovery of a discrete, observable datum. See California v. Ramos, 463 U.S. 992, 1008, 103 S.Ct. 3446, 77 L.Ed.2d 1171 (1983)(‘Once the jury finds that the defendant falls within the legislatively defined category of persons eligible for the death penalty, ... the jury then is free to consider a myriad of factors to determine whether death is the appropriate punishment.’); Zant v. Stephens, 462 U.S. 862, 902, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983)(Rehnquist, J., concurring in the judgment)(‘sentencing decisions rest on a far-reaching inquiry into countless facts and circumstances and not on the type of proof of particular elements that returning a conviction does’).
“In Ford v. Strickland, supra, the defendant claimed that ‘the crime of capital murder in Florida includes the element of mitigating circumstances not outweighing aggravating circumstances and that the capital sentencing proceeding in Florida involves new findings of fact significantly affecting punishment.’ Ford, 696 F.2d at 817. The United States Court of Appeals for the Eleventh Circuit rejected this argument, holding that ‘aggravating and mitigating circumstances are not facts or elements of the crime. Rather, they channel and restrict the sentencer’s discretion in a structured way after guilt has been fixed.’ 696 F.2d at 818. Furthermore, in addressing the defendant’s claim that the State must prove beyond a reasonable doubt that the aggravating circumstances outweighed the mitigating circumstances, the court stated that the defendant’s- argument
“ ‘seriously confuses proof of facts and the weighing of facts in sentencing. While the existence of an aggravating or mitigating circumstance is a fact susceptible to proof under a reasonable doubt or preponderance standard, see State v. Dixon, 283 So.2d 1, 9 (Fla.1973), cert. denied, 416 U.S. 943, 94 S.Ct. [1950], 40 L.Ed.2d 295 (1974), and State v. Johnson, 298 N.C. *531 47, 257 S.E.2d 597, 617-18 (1979), the relative weight is not. The process of weighing circumstances is a matter for judge and jury, and, unlike facts, is not susceptible to proof by either party.’
“696 F.2d at 818. Alabama courts have adopted the Eleventh Circuit’s rationale. See Lawhorn v. State, 581 So.2d 1159, 1171 (Ala.Crim.App.1990)(‘while the existence of an aggravating or mitigating circumstance is a fact susceptible to proof, the relative weight of each is not; the process of weighing, unlike facts, is not susceptible to proof by either party’); see also Melson v. State, 775 So.2d 857, 900-901 (Ala.Crim.App.1999); Morrison v. State, 500 So.2d 36, 45 (Ala.Crim.App.1985).
“Thus, the determination whether the aggravating circumstances outweigh the mitigating circumstances is not a finding of fact or an element of the offense. Consequently, Ring and Apprendi do not require that a jury weigh the aggravating circumstances and the mitigating circumstances.”
Ex parte Waldrop, 859 So.2d at 1187-90 (footnotes omitted). This Court concluded that “all [that] Ring and Apprendi require” is that “the jury ... determine! ] the existence of the ‘aggravating circumstance necessary for imposition of the death penalty.’” 859 So.2d at 1188 (quoting Ring, 536 U.S. at 609), and upheld Alabama’s capital-sentencing scheme as constitutional when a defendant’s capital-murder conviction included a finding by the jury of an aggravating circumstance making the defendant eligible for the death sentence.
In Ex parte McNabb, 887 So.2d 998 (Ala.2004), this Court further held that the Sixth Amendment right to a trial by jury is satisfied and a death sentence may be imposed if a jury unanimously finds an aggravating circumstance during the penalty phase or by special-verdict form. McNabb emphasized that a jury, not the judge, must find the existence of at least one aggravating factor for a resulting death sentence to comport with the Sixth Amendment.
The United States Supreme Court in its recent decision in Hurst applied its holding in Ring to Florida’s capital-sentencing scheme and held that Florida’s capital-sentencing scheme' was unconstitutional because, under that scheme, the trial judge, not the jury, made the “findings necessary to impose the death penalty.” 577 U.S. -, 136 S.Ct. at 622. Specifically, the Court held that Florida’s capital-sentencing scheme violated the Sixth Amendment right to a trial by jury because the judge, not the jury, found the existence of the aggravating circumstance that made Hurst death eligible. The Court emphasized that the Sixth Amendment requires that the specific findings authorizing a sentence of death must be made by a jury, stating:
“Florida concedes that Ring required a jury to .find every fact necessary to render Hurst eligible for the death penalty. But Florida argues that when Hurst’s sentencing jury recommended a death sentence, it ‘necessarily included a finding of an aggravating circumstance.’ ... The State contends that this finding qualified Hurst for the death penalty under Florida law, thus satisfying Ring. ‘[T]he additional requirement. that a judge also find an aggravator,’ Florida concludes, ‘only provides the defendant additional protection.’ ...
“The State fails to appreciate the central and singular role the judge plays under Florida law. .-.. [T]he Florida sentencing statute does not make a defendant eligible for death until ‘findings by the court that such person shall be *532 punished by death.’ Fla. Stat. § 775.082(1) (emphasis added). The trial court alone must find ‘the facts ... [t]hat sufficient aggravating circumstances exist’ and ‘[t]hat there are insufficient mitigating circumstances to outweigh the aggravating circumstances.’ § 921.141(3) .... ‘[T]he jury’s function under the Florida death penalty statute is advisory only.’ Spaziano v. State, 433 So.2d 508, 512 (Fla.1983). The State cannot now treat the advisory recommendation by the jury as the necessary factual finding that Ring requires.
[[Image here]]
“The Sixth Amendment protects a defendant’s right to an impartial jury. This right required Florida to base Timothy Hurst’s death sentence on a jury’s verdict, not a judge’s factfinding. Florida’s sentencing scheme, which required- the judge alone to find the existence of an aggravating circumstance, is therefore unconstitutional.”.
Hurst, 577 U.S. -, 136 S.Ct. at 622-24 (final emphasis added).
Bohannon contends that, in light of Hurst, Alabama’s - capital-sentencing scheme, like Florida’s, is unconstitutional because, he says, in Alabama a jury does not make “the critical findings necessary to impose the death penalty.” 577 U.S. -, 136 S.Ct. at 622. He maintains that Hurst requires that the jury not only determine the existence of the aggravating circumstance that makes a defendant death-eligible but also determine that the existing aggravating circumstance outweighs any existing mitigating circumstances before a death sentence is constitutional. Bohannon reasons that because in Alabama the judge, when imposing a., sentence of death, makes a finding of the existence of an aggravating circumstance independent of the jury’s fact-finding and makes an independent determination that the aggravating circumstance or circumstances outweigh the mitigating- circumstance or circumstances found to exist, the resulting death sentence is unconstitutional. We disagree.
Our reading of Apprendi,' Ring, and Hurst leads us to .the conclusion that Alabama’s capital-sentencing.- scheme is consistent with the Sixth Amendment. As previously recognized, Apprendi holds that any fact that elevates a defendant’s sentence above the range established by a jury’s verdict must be determined-by the jury. Ring holds that the Sixth Amendment right to a jury trial requires that a jury “find an aggravating circumstance necessary for imposition of the death penalty.” Ring, 536 U.S. at 585. Hurst applies Ring and reiterates that a jury, not a judge, must find the existence of an aggravating factor to make a defendant death-eligible. Ring and Hurst require only that the jury find the existence of the 'aggravating factor that makes a defendant eligible for the death penalty—the plain language in those cases requires nothing more and nothing less. Accordingly, because in Alabama a jury, not the judge, determines by a unanimous verdict the critical finding that an aggravating circumstance exists beyond a reasonable doubt to make a defendant- death-eligible, Alabama’s capital-sentencing scheme does not violate the Sixth Amendment.
Moreover, Hurst does not address the process of weighing the aggravating and mitigating circumstances or suggest that the jury must conduct the weighing pro-céss to satis©'the Sixth Amendinent.' This Court rejected that argument in Ex parte Waldrop, holding that the Sixth Amendment “do[es] not require that a jury weigh the aggravating. circumstances and the mitigating circumstances” because, rather than being “a factual determination,” the weighing process is “a moral or legal judg *533 ment that takes into account a theoretically limitless set of facts.” 859 So.2d at 1190, 1189. Hurst focuses on the jury’s factual finding of the existence of an aggravating circumstance to make a defendant death-eligible; it does not mention the jury’s weighing of the aggravating and mitigating circumstances. The United States Supreme Court’s holding in Hurst was based on an application, not an expansion, of Apprendi and Ring; consequently, no reason exists to disturb our decision in. Ex parte Waldrop with regard to the weighing process. Furthermore, nothing in our review of Apprendi, Ring, and Hurst leads us to conclude that in Hurst the United States Supreme Court held that the Sixth Amendment requires that a jury impose a capital sentence. Apprendi expressly stated that trial courts may “exercise discretion—taking into consideration various factors relating both to offense and offender—in imposing a judgment within the range prescribed by statute.” 530 U.S. at 481. Hurst does not disturb this holding.
Bohannon’s argument that the United States Supreme Court’s overruling in Hurst of Spaziano v. Florida, 468 U.S. 447, 104 S.Ct. 3154, 82 L.Ed.2d 340 (1984), and Hildwin v. Florida, 490 U.S. 638, 109 S.Ct. 2055, 104 L.Ed.2d 728 (1989), which upheld Florida’s capital-sentencing scheme against constitutional challenges, impacts the constitutionality of Alabama’s capital-sentencing scheme is not persuasive. In Hurst, the United States Supreme Court specifically stated: “The decisions [in Spa-ziano and Hildwin] are overruled to the extent they allow a sentencing judge to find an aggravating circumstance, independent of a jury’s factfinding, that is necessary for imposition of the death penalty.” Hurst, 577 U.S. -, 136 S.Ct. at 624 (emphasis added). Because in Alabama a jury, not a judge, makes the finding of the existence of an aggravating circumstance that makes a capital defendant eligible for a sentence of death, Alabama’s capital-sentencing scheme is not. unconstitutional on this.basis.
Bohannon’s death sentence is consistent with Apprendi, Ring, and Hurst and does not violate the Sixth Amendment. The jury, by its verdict finding Bohannon guilty of murder made capital because “two or more persons [we]re murdered by the defendant by one act or pursuant to one scheme or course of conduct,” see § 13A-5-40(a)(10), Ala. Code 1975, also found the existence of the aggravating circumstance, provided in § 13A-5-49(9), Ala. Code 1975, that “[t]he defendant intentionally caused the death of two or more persons by one act or pursuant to one scheme of course of conduct,” which made Bohan-non eligible for a sentence of death. See also § 13A-5-45(e), Ala. Code 1975 (“[A]ny aggravating circumstance which the verdict convicting the defendant establishes was proven beyond a reasonable doubt at trial shall be considered as proven beyond a reasonable doubt for purposes of the sentence hearing.”). Because the jury, not the judge, unanimously found the existence of an aggravating factor—the intentional causing of the death of two or more persons by one act or pursuant to one scheme or course of conduct—making Bohannon death-eligible, Bohannon’s Sixth Amendment rights werenot violated.
Bohannon’s argument • that the jury’s finding of the existence of the aggravating circumstance during the guilt phase of his trial was not an “appropriate finding” for use during the penalty phase is not persuasive. Bohannon, reasons that because, he says, the jury was not informed during the guilt phase that a finding of the existence of the aggravating circumstance during the guilt phase would make him eligible for the death penalty, the jury did not *534 know the consequences of its decision and appreciate its seriousness and gravity.
A review of the record establishes that the members of the venire were “death-qualified” during voir dire. Specifically, the trial court instructed:
“THE COURT: The defendant was indicted by the Grand Jury of Mobile County during its term in June of 2011....
[[Image here]]
“THE COURT: The case—and by that I mean the Grand Jury indictment—is indicted for what' is known as capital murder.
“Capital murder is an offense which, if the defendant is convicted, is punishable either by death or by life imprisonment without the possibility of parole.
“The first part of this case that will be presented to the jury is what is known as the guilt phase. The jury will be called upon to determine whether the State has proved that the defendant is guilty beyond a reasonable doubt of the offense, or whether the State has proved the guilt of the defendant beyond a reasonable doubt of anything at all.
“If the jury finds the defendant not guilty, that, of course, ends the matter.
“If the jury finds the defendant guilty of some offense less than capital murder, then it will be incumbent upon the Court—or me—to impose the appropriate punishment.
“If, however, the jury finds the defendant guilty of the offense of capital murder, the jury would be brought back for a second phase, or what we know as the penalty phase of this case. And, at that time, the jury may hear more evidence, will hear legal instructions and argument of counsel. The jury would then make a recommendation as to whether the appropriate punishment is death or life imprisonment without the possibility of parole.”
Bohannon’s jury was informed during voir dire that, if it returned a verdict of guilty of capital murder, Bohannon was eligible for a sentence of death. Therefore, Bohan-non’s argument that his jury was not impressed with the seriousness and gravity of its finding of the aggravating circumstance during the guilt phase of his trial is not supported by the record.
Next, Bohannon contends that an instruction to the jury that its sentence is merely advisory conflicts with Hurst because, he says, Hurst establishes that an “advisory recommendation” by the jury is insufficient as the “necessary factual finding that Ring requires.” Hurst, 577 U.S. -, 136 S.Ct. at 622 (holding that the “advisory” recommendation by the jury in Florida’s capital-sentencing scheme was inadequate as the “necessary factual finding that Ring requires”). Bohannon ignores the fact that the finding required by Hurst to be made by the jury, i.e., the existence of the aggravating factor that makes a defendant death-eligible, is indeed made by the jury, not the judge, in Alabama. Nothing in Apprendi, Ring, or Hurst suggests that, once the jury finds the existence of the aggravating circumstance that establishes the range of punishment to include death, the jury cannot make a recommendation for the judge to consider in determining the appropriate sentence or that the judge cannot evaluate the jury’s sentencing recommendation to determine the appropriate sentence within the statutory range. Therefore, the making of a sentencing recommendation by the jury and the judge’s use of the jury’s recommendation to determine the appropriate sentence does not conflict with Hurst.
Bohannon further contends that the circuit court erred when it failed to *535 limit the State’s questioning of defense character witnesses about his alleged acts on the night of the shooting. Because Bo-hannon made no objection on this basis at trial, we review the issue for plain error.
“Plain error is
“ ‘error that is so obvious that the failure to notice it would seriously affect the fairness or integrity of the judicial proceedings. Ex parte Taylor, 666 So.2d 73 (Ala.1995). The plain error standard applies only where a particularly egregious error occurred at trial and that error has or probably has substantially prejudiced the defendant. Taylor.’
“Ex parte Trawick, 698 So.2d [162,] 167 [ (Ala.1997) ].”
Ex parte Walker, 972 So.2d 737, 742 (Ala.2007). See also Ex parte Womack, 436 So.2d 766, 769 (Ala.1983).
According to Bohannon, the State’s questioning was highly prejudicial in light of the facts that his state of mind was a central issue for the jury’s determination and that his defense depended on persuading the jury that it should view the surveillance tape and other evidence through the lens of his law-abiding character. He further argues that the prejudice was compounded by the State’s argument that each of his character witnesses admitted that a person who beats and shoots somebody is not a law-abiding, peaceful person. Accordingly, he maintains that his conviction should be reversed as a result of the circuit court’s failure to limit the State’s cross-examination of his character witnesses.
Our review of the record establishes that the State’s questioning of Bohannon’s character witnesses about his conduct immediately before and during the offense as reflected in the surveillance tape “ ‘did not seriously affect the fairness or integrity of the judicial proceedings.’ ” Ex parte Walker, 972 So.2d at 742 (quoting Ex parte Trawick, 698 So.2d 162, 167 (Ala.1997)). The record establishes that the State asked three of Bohannon’s witnesses whether the content of the tape was consistent with Bohannon’s reputation for good behavior. For example, the State asked a witness: “[Y]ou saw what happened out there at the Paradise Lounge ... [TJhat’s not consistent with having a good reputation.” The State’s questions were about a surveillance tape that had already been admitted into evidence and had been viewed by the jury. Because the jury was free to draw its own conclusions about Bohannon’s state of mind from its viewing of the tape, no probability exists that the alleged improper questioning substantially prejudiced Bohannon or affected the integrity of his trial. Plain error does not exist in this regard.
Lastly, Bohannon contends that the circuit court also committed plain error by failing sua sponte to instruct the jury on the victims’ intoxication. Specifically, he argues that because the evidence supported a reasonable inference of self-defense, the circuit court should have instructed the jury that the victims’ intoxication at the time of the offense may have made them aggressive. See Stevenson v. State, 794 So.2d 453, 455 (Ala.Crim.App.2001)(recognizing that “ ‘[a] defendant is permitted to demonstrate, under a theory of self-defense, that the victim was under the influence of alcohol at the time of the fatal altercation’ ” and that “a defendant should be allowed a jury instruction [when requested] regarding the intoxication of the deceased, to show tendencies towards aggression, when the evidence would support a reasonable inference of self-defense” (quoting Quinlivan v. State, 555 So.2d 802, 805 (Ala.Crim.App.1989))).
In Ex parte Martin, 931 So.2d 759 (Ala.2004), this Court, when addressing wheth *536 er the trial court’s failure to give, sua sponte, instructions to the jury explaining the scope-of the victim’s statements constituted plain error, recognized:
“ ‘ “To rise to the level of plain error, the claimed error must not only seriously affect a defendant’s ‘substantial rights,’ but it must also have an unfair prejudicial impact on the jury’s deliberations.” ’ Ex parte Bryant, 951 So.2d 724, 727 (Ala.2002)(quoting Hyde v. State, 778 So.2d 199, 209 (Ala.Crim.App.1998)). In United States v. Young, 470 U.S. 1, 15, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985), the United States Supreme Court, construing the federal plain-error rule, stated:
“ ‘The Rule authorizes the Courts of Appeals to correct only “particularly egregious errors,” United States v. Frady, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982), those errors that “seriously affect the fairness, integrity or public reputation of judicial proceedings,” United States v. Atkinson, 297 U.S. [157], at 160, 56 S.Ct. 391, 80 L.Ed. 555 [ (1936) ]. In other words, the plain-error exception to the contemporaneous-objection rule is to be “used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result.” United States v. Frady, 456 U.S. at 163, n. 14, 102 S.Ct. 1584.’
“See also Ex parte Hodges, 856 So.2d 936, 947-48 (Ála.2003)(recognizing that plain error exists only if failure to recognize the error would ‘seriously affect the fairness or integrity of the judicial proceedings,’ and that the plain-error doctrine is to be ‘used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result’ (internal quotation marks omitted)).”
931 So.2d at 767-68.
This Court has required a trial court to instruct the jury sua sponte “only [in] those instances where evidence of prior convictions [were] offered for impeachment purposes.” Johnson v. State, 120 So.3d 1119, 1128 (Ala.2006)(citing Ex parte Martin, 931 So.2d at 769). In such cases, the trial court has been required to issue a sua sponte instruction because, ,in light of the facts in those particular cases, an instruction was considered necessary to protect the defendant from the misuse of “presumptively prejudicial” information that could be considered by the jury for a limited purpose. Ex parte Minor, 780 So.2d 796, 804 (Ala.2000).
The record in this case simply does not support a conclusion, that the circuit court’s failure to issue a sua sponte instruction on the victims’ intoxication constituted plain error. The evidence at issue is not “presumptively prejudicial” to Bo-hannon, and, because the jury was instructed to consider all the evidence, Bo-hannon was not' substantially prejudiced by the circuit court’s failure to issue such an instruction. The record establishes that Bohannon’s counsel argued in his opening statement that one of the victims pushed Bohannon a couple of times during the altercation and that the victims were high on methamphetamine and that that drug makes individuals. aggressive. The record also establishes that evidence Was admitted indicating that the victims- were intoxicated-and that the jury, when it'viewed the surveillance tape, was able to observe the confrontation between Bohannon and the victims. Therefore, the jury was free to consider all the evidence Bohannon presented, which included evidence of the victims’ intoxication and Bohannon’s argument that the victims’ intoxication made them act aggressively. Because the jury was instructed to consider all the evidence, the failure to sua sponte give an instrucr tion on the victims’ intoxication did not seriously affect the fairness or. integrity of Bohannon’s trial or substantially prejudice *537 Bohannon. Ex parte Martin, supra; and Ex parte Henderson, 583 So.2d 305, 306 (Ala.1991). After considering the evidence and the totality of the circuit court’s jury instruction, we conclude that the circuit court’s failure to give sua sponte an instruction about the proper use of the victims’ intoxication did not constitute plain error.
Conclusion
Based on the foregoing, the judgment of the Court of Criminal Appeals is affirmed.
AFFIRMED.
Bolin, Parker, Shaw, Main, Wise, and Bryan, JJ., concur.
Murdock, J., concurs in the result.